In the Matter of the ESTATE OF John A. ZENT, Deceased.

Ann M. JOHNSON, Claimant and Appellant,

v.

ESTATE OF John A. ZENT, Deceased, Defendant and Appellee.

Civ. No. 890408.

Supreme Court of North Dakota.

July 31, 1990.

against the estate of John A. Zent. We reverse and remand.

Ann and John met in Mandan in late 1979 and developed a personal relationship which lasted until his death in 1988. Marriage was discussed but not accomplished. Throughout their close association, Ann and John maintained separate residences but spent considerable amounts of time together, six to ten hours a day almost every day.

As Ann characterizes the relationship, it had two stages. The first stage was social and involved going out to movies and dinners and vacationing together. In the second stage, Ann maintains that she was "a virtual houseservant and nursemaid" to John. During that period, John was gradually and progressively incapacitated by back surgery, a series of strokes and Alzheimer's disease.[1] According to Ann, John began to deteriorate mentally in 1985, until her once-robust social companion was a confused old man in need of almost constant attention. In June 1988, John was admitted to a nursing home and died three weeks later.

On November 21, 1988, Ann filed a claim against John's estate seeking compensation in the amount of $31,025.00 for services rendered to him. She requested $9,125.00, or $5.00 per day for personal services rendered from 1980 to 1985, including "light housekeeping, assisting with the cooking, laundry, shopping, etc." She sought $21,-900.00, or $20.00 a day, for services rendered from 1985–1988, including "taking him to clinic, hospital and surgical appointments; aftercare following surgeries; cooking and housecleaning; doing the laundry; taking care of pet dog; shopping for

Lester J. Schirado, Mandan, for claimant and appellant.

Arlen M. Ruff of Kelsch, Kelsch, Ruff & Austin, Mandan, for defendant and appellee.

LEVINE, Justice.

Ann Johnson appeals from a county court judgment disallowing her claim

---

1. Alzheimer's disease is the most common form of dementia, a deterioration in intellectual performance that involves memory loss and interferes with work and social activities. Of the more than four million Americans with dementia, one-third are so impaired "they can no longer manage without assistance in the simplest daily routine activities of eating, dressing, grooming and toileting." *Understanding Alzheimer's Disease* 6 (M. Aronson ed. 1988).

As described in L. Powell and K. Courtice, *Alzheimer's Disease: A Guide for Families* (1983), there are four stages to the disease. In the first, the patient has less energy and is slower to react or learn new things. In the second, he may misunderstand what he hears and is unable to calculate so that he may need help balancing a checkbook. In the third stage he exhibits obvious disability, losing orientation to time and place. In the final stage, the patient wanders, may become incontinent and needs help with all the activities of daily life and self-care.

groceries and other items; and administering medication."

Howard A. Zent, John's son and personal representative, disallowed Ann's claim in its entirety. She then requested a hearing in county court. The county court affirmed the disallowance, determining that there was no express contract between Ann and John, no implied-in-fact contract, no implied-in-law contract, and that John was not unjustly enriched by services performed by Ann.

On appeal, Ann argues that the trial court erred in concluding that there was no contract implied in law and no unjust enrichment. We agree.

The concepts of contract implied in law and unjust enrichment are interrelated. A contract implied in law, or quasi-contract, is not a contract at all but rather an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended. *See, e.g., Gate City S. & L. Ass'n v. International Bus. Mach. Corp.*, 213 N.W.2d 888 (N.D.1973); *In re Estate of Lewis*, 168 Mich.App. 70, 423 N.W.2d 600 (1988). The essence of an implied-in-law contract is the receipt of a benefit by a decedent from the claimant, which it would be inequitable for the decedent to retain without paying for. *Gate City S. & L. Ass'n*, 213 N.W.2d at 893. If it would be inequitable for the decedent to retain the benefit, he is said to be unjustly enriched. Restatement of Restitution § 1, comments a, c (1937). *See Midland Diesel Serv. & Engine Co. v. Sivertson*, 307 N.W.2d 555 (N.D.1981). A person who is unjustly enriched at the expense of another is required to make restitution to the other. Restatement of Restitution § 1.

A determination of unjust enrichment is necessarily a conclusion of law because it holds that a certain state of facts is contrary to equity. *Midland Diesel*, 307 N.W.2d at 557. The trial court's conclusions that unjust enrichment has not occurred and that there is no contract implied in law, are, therefore, fully reviewable. *Id.* at 557. The trial court's findings of fact that support these legal conclusions are subject to the clearly erroneous standard of review under NDRCivP 52(a). A finding is clearly erroneous when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Koch v. Williams*, 456 N.W.2d 299 (N.D.1990).

The trial court found that Ann failed to establish an implied-in-law contract, because she did not provide a benefit to John which equity demands she be compensated for. Finding XI speaks to the question whether Ann's services benefited John:

"XI.

"That John Zent was never bedridden, and did not require 24–hour nursing care until the time he was placed in the nursing home shortly before his death."

Findings XII and XVI focus on whether it would be inequitable for John to retain the services without paying:

"XII.

"That the services rendered by Ann Johnson to John Zent were not of an exceptional or peculiar nature.

"XVI.

"That Ann Johnson provided services to John Zent, voluntarily and gratuitously, out of love and friendship, with no intention on the part of either party that she be paid."

We believe that these findings are clearly erroneous and that they led the trial court to err as a matter of law in concluding that there was no unjust enrichment and consequently no implied-in-law contract. We conclude that Ann is entitled to recover the reasonable value of at least some of her services.

The conferral of any benefit which is commonly the subject of pecuniary compensation, including the rendition of personal services, is an adequate foundation for a legally implied promise to pay the benefit's reasonable value. *Cole v. Cole*, 517 N.E.2d 1248 (Ind.Ct.App.1988). *See*

Restatement of Restitution § 1, comment c (1937). Thus, the domestic and nursing services for which Ann seeks to recover may properly be the subject of restitution under an implied-in-law contract.

■ The trial court, however, erred in failing to recognize the benefit of Ann's services to John. Its finding that John was never bedridden and did not require 24–hour nursing care until he was placed in a nursing home is unresponsive to Ann's claim that from 1985–1988 she rendered domestic and nursing services for which she is entitled to recover. Ann did not claim entitlement to payment for around-the-clock care. Although her claim was in terms of a per-day rate, her testimony was that she rendered this care usually only eight to ten hours per day.

Ann testified both about the need for and the nature of her services to John. She testified that in the last three years of John's life, her relationship to John was that of a babysitter to her charge; that in his last three years he could not have lived alone without help because of his mental condition; that in his last year he was not able to dress or bathe himself and that she did these things for him; that she administered medication to him because he could not keep his pills straight. Ann testified that in May 1988, John's mental confusion was such that "he couldn't remember where the bathroom was at to try to get to the bathroom on time. By that time he was all messed up. So I had to get him cleaned up. That happened two, three times a day."

While the credibility and weight to be given Ann's testimony are matters for the fact-finder, we cannot overlook the fact that Ann's testimony on John's deteriorating condition and increasing need for attention was substantially corroborated by the testimony of John's treating physician who offered evidence that sometime after October of 1986, John's condition began to deteriorate and he would have been in need of someone to care for him.

It is undisputed that John was a victim of Alzheimer's disease. John's doctor testified at the hearing that he treated John from 1982 until his death in June 1988. A letter from the doctor, introduced at the hearing, stated that from:

"mid 1985 to until August 1986 [John] would have been classified as basic care and [needed to have] someone around him. He at times would become confused and some senility was beginning to set in. However, his basic needs he could care for. He did ... probably not require in house care up until his hospitalization in October 1986.

"After October, 1986, [John] started to deteriorate.... He would walk away from home and started to get lost really from about late 1986 on. In my opinion, from 1986 until his nursing home transfer [in June 1988], this patient certainly required someone with him to prevent him from hurting himself or wandering off and getting lost.... I personally feel that from October of 1986 until his nursing home commitment which occurred largely because Ms. Johnson was unable to care for him any further [,t]his patient was, in fact, skilled care.

"In summary, I believe that prior to probably October 1986, the care provided by Ann for Mr. Zent was and could be related to that only of a friend, as what a friend would do for another individual. After his hospitalization of October, 1986, she provided the care of a 24 hour a day nurse and it is my understanding that she on frequent occasions had to stay overnight as he was completely disoriented without her presence."

■ The trier of fact is not required to accept expert opinions as conclusive. *Gardebring v. Rizzo*, 269 N.W.2d 104 (N.D. 1978). However, it is not free to arbitrarily disregard such testimony. *Id.* Here, we can discern nothing in the record which discloses the reason for disregarding the medical diagnosis of Alzheimer's disease or the description of its symptoms and necessary treatment. Nor can we divine any such justification. Based upon the unrefuted medical evidence, we conclude that the trial court's finding that the services Ann rendered to John, at least during his deterioration from Alzheimer's, were neither re-

quired nor of an exceptional or peculiar nature is clearly erroneous. Rather, John, who required "skilled care," received it from Ann. Under the circumstances, we believe that Ann demonstrated that she conferred a valuable benefit upon John.

We also believe that the trial court clearly erred when it found that the services Ann provided were rendered gratuitously. If one confers a benefit gratuitously, the retention of that benefit without payment is not considered unjust. *See Cole,* 517 N.E.2d at 1250; *Pembroke Steel Co. v. Technical Sales Assoc.,* 138 Ga.App. 744, 227 S.E.2d 491 (1976). Whether the services were rendered gratuitously is a question of fact. *Cole,* 517 N.E.2d at 1250.

The burden rested upon the estate to show affirmatively that the services were performed gratuitously. *Hegel v. O'Malley Ins. Co., Inc.,* 122 Ariz. 52, 593 P.2d 275 (1979). The personal representative argues that the services rendered by Ann were presumptively gratuitous because she and John were like husband and wife. Whenever services are rendered by one family member to another, a presumption arises that the services are gratuitous and that compensation was not intended. *In re Estate of Raketti,* 340 N.W.2d 894, 901 (N.D.1983). However, the presumption does not apply to cases relying on implied-in-law contracts. *See In re Estate of Raketti* and cases cited therein. Nor does it apply to non-family members unless the parties, although never married, lived together as husband and wife. *In re Estate of Lewis,* 423 N.W.2d at 603. Therefore, we are unpersuaded by the argument urging a presumption of gratuitousness.

The personal representative next argues that Ann should not recover because, as the trial court found, she testified that she rendered the services gratuitously. Among other statements, he points to the following exchange in deposition testimony:

"Q. Okay. Isn't it true, Ann, that you never expected to be paid?

"A. Right. I didn't ask for anything."

We hold, as a matter of law, that a statement of a claimant's unexpressed se-

cret intention does not defeat a claim of unjust enrichment. Notwithstanding a secret intention not to be paid, we believe other factors bear more directly on whether justice requires compensation for services. Here, it is the nature of the services provided, the decedent's need for them, and the non-familial relationship that make it unjust not to compensate for their reasonable value. The services were not rendered in the discharge of the mutual moral or legal obligation attending a family relationship. *See In re Estate of Dal Paos,* 118 Ill.App.2d 235, 254 N.E.2d 300, 302 (1969). Nor were the services of a kind that usually flow from the kind of relationship Ann and John shared. Instead, they were menial, tiresome, and near the end, when John became incontinent, most unpleasant.

The personal representative, citing *Bismarck Hospital Ass'n v. Burleigh County,* 146 N.W.2d 887 (N.D.1966), argues that Ann should not prevail because her services were not rendered under such circumstances as reasonably notified John that she was expecting to be paid compensation for them. In *Bismarck Hospital,* we stated that "an essential prerequisite ... to liability on *quantum meruit,* is the acceptance of benefits by the one sought to be charged, rendered under such circumstances as reasonably notify him that the one performing such services was expecting to be paid compensation therefor." *Bismarck Hospital,* 146 N.W.2d at 893. All this statement means is that, to be compensable, the services rendered are of such a nature that, under the circumstances of a particular case, fairness and justice compel the conclusion that they ought to be compensated on an implied-in-law contractual theory because the recipient ought to have been forewarned that such services do not come cost-free.

Where an implied-in-law contract is asserted, the question is not merely what is or is not the case but, rather, what in equity ought to be the case. *See Midland Diesel,* 307 N.W.2d at 557. A contract implied in law is a fiction of law adopted to achieve justice where no true

contract exists. *Mahan v. Mahan*, 80 S.D. 211, 121 N.W.2d 367 (1963). *See Stark County v. State*, 160 N.W.2d 101 (N.D. 1968). Justice is best served by permitting Ann to recover the reasonable value of those extraordinary services she rendered to John when he was unable to care for himself. Under the circumstances, the law should presume that those services were both given and received in the expectation of being paid for. *See In re Estate of Dal Paos*, 254 N.E.2d at 303; *In re Estate of Milborn*, 122 Ill.App.3d 688, 461 N.E.2d 1075 461 N.E.2d 1075, 1078 (1984).

Although we hold that Ann is entitled to recover under a contract implied in law, we remand to the trial court for a determination of the duration and reasonable value of the variety of services rendered by Ann. The personal representative has raised certain defenses, including offsetting payments, which the trial court did not address, nor do we. On remand, the trial court may consider these matters and others it deems appropriate.

Reversed and remanded.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.