2002 ND 128

Jerry L. MEIDE, Individually and Meide & Son, Incorporated, a North Dakota Corporation, Plaintiffs and Appellants,

v.

Wayne STENEHJEM, Attorney General, ex rel. STATE OF NORTH DAKOTA, State Health Department, and Environmental Abatement Services, Inc., Defendants and Appellees.

No. 20010273.

Supreme Court of North Dakota.

Aug. 15, 2002.

Joseph A. Turman (argued), DeMars & Turman, Fargo, for plaintiffs and appellants.

Lyle G. Witham (argued), Assistant Attorney General, Attorney General's Office, Bismarck, for defendants and appellees Wayne Stenehjem and State of North Dakota Health Department.

Suzanne M. Schweigert (argued), Smith Bakke Hovland & Oppegard, Bismarck, for defendant and appellee Environmental Abatement Services, Inc.

KAPSNER, Justice.

[¶ 1]   Jerry L. Meide, individually, and Meide & Son, Inc. (collectively, "Meide"), appeal from a summary judgment dismissing the declaratory judgment action filed against the State of North Dakota, the North Dakota Department of Health (collectively, "State"), and Environmental Abatement Services, Inc. ("EAS"). Because genuine issues of material fact exist regarding the amount of compensation owed by Meide to EAS for asbestos abatement, the district court erred as a matter of law in granting summary judgment. The district court also erred in concluding Meide was barred by the doctrine of judicial estoppel from seeking to determine the amount owed through a declaratory judgment action. We reverse and remand for further proceedings consistent with this opinion.

I

[¶ 2]   Meide improperly removed asbestos from buildings in Wahpeton. The State ordered Meide to develop and implement a cleanup plan in February of 1998. Meide retained Nova Environmental Services, Inc. ("Nova"), to conduct an asbestos abatement on the property. In turn, Nova contracted with EAS to perform the asbestos abatement work.

[¶ 3]   After performing the abatement work, EAS sent Meide a bill in the amount of $58,160. Before any payment was made, the State ordered more cleanup at additional building sites. Meide wanted EAS to perform the second round of abatement work, but EAS refused to do so until Meide paid the bill from the first abatement. Meide paid a portion of the bill and EAS performed the second round of abatement work. EAS sent a bill to Meide in the amount of $42,675 for the second abatement.

[¶4] Following the two rounds of abatement work, the State commenced a lawsuit against Meide for violation of various state pollution control and hazardous waste acts. The State and Meide entered into a consent agreement to end the litigation. The State and Meide each "agree[d] to be bound by the terms and conditions of this Consent Agreement." The purpose of the consent agreement was "to settle this matter" between Meide and the State regarding various environmental regulation violations. EAS was not a party to the consent agreement. The State and Meide stipulated:

1. Jerry L. Meide and/or Meide and Son, Incorporated, shall satisfy any monetary obligations owing to Nova Environmental Services Incorporated the environmental consultant, and Environmental Abatement Services of N.D., the environmental remediation contractor who performed the asbestos cleanup on the identified buildings in Wahpeton, North Dakota within two years of the date of entry of judgment herein. The contractors shall retain the right to seek compensation from Defendant prior to the two-year period;

2. Jerry L. Meide and/or Meide and Son, Incorporated, shall pay restitution to the State of North Dakota in the amount of $9,208 within two years of the date of entry of judgment herein;

3. If Jerry L. Meide and/or Meide and Son, Incorporated fails to comply with either 1 or 2 of paragraph XX above, the full Two Hundred Twenty–Five Thousand Dollars ($225,000) jointly and severally assessed against Jerry L. Meide and Meide and Son, Incorporated, become immediately due and payable to the State of North Dakota.

Judgment pursuant to the consent agreement was filed January 25, 1999. On January 18, 2001, just days before the $225,000 penalty came due, Meide filed "a declaratory judgment action seeking to determine the rights and obligations of Meide and [EAS] and the proper amount of compensation, if any, to which [EAS] is entitled for the work performed as a subcontractor of Nova." Meide also deposited $69,178.69 with the Southeast Judicial District Clerk of Court in an interest bearing account, claiming the amount represented the unpaid balance owed to EAS.[1]

[¶5] EAS, joined by the State, moved for summary judgment, claiming Meide was refusing to pay when the amount owed was known. Following a hearing on the summary judgment motion, the district court granted the motion, reasoning there was not a genuine issue of material fact because the consent agreement between the State and Meide was unambiguous and the amount owed was known and ascertainable. The district court also determined Meide's declaratory judgment action was barred under the doctrine of judicial estoppel. Meide appeals.

## II

[¶6] We review this appeal under our standards for summary judgment, a procedure which promptly resolves a

---

1. None of the parties have briefed or raised the issues of whether the amount deposited with the district court is enough to satisfy any monetary claim EAS has, or whether the deposit spares Meide from having to pay the $225,000 civil penalty to the State. "Issues not briefed or argued are deemed abandoned." *Olmstead v. First Interstate Bank of Fargo, N.A.*, 449 N.W.2d 804, 807 (N.D.1989). Accordingly, we decline to review whether the deposit with the district court is sufficient, and whether it precludes the imposition of the civil penalty called for in the consent agreement.

controversy on the merits without a trial if the evidence demonstrates the nonexistence of a genuine issue of material fact, or of inferences to be drawn from undisputed material facts, and if the evidence shows a party is entitled to judgment as a matter of law. N.D.R.Civ.P. 56(c); *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. "Issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts." *Fetch*, at ¶ 8. Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts. *Helbling v. Helbling*, 267 N.W.2d 559, 561 (N.D.1978).

[¶ 7] "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible ...." N.D.C.C. § 9–07–04. "Construction of a written contract is a question of law." *Garofalo v. Saint Joseph's Hospital*, 2000 ND 149, ¶ 7, 615 N.W.2d 160. "If the intent of the parties can be ascertained from the agreement alone, interpretation of the contract is a question of law." *Id.* "Whether a contract is ambiguous is a question of law." *National Bank of Harvey v. International Harvester Co.*, 421 N.W.2d 799, 801 (N.D. 1988). "A contract is ambiguous when rational arguments can be made for different positions about its meaning." *Id.* "Extrinsic evidence is properly considered only if the language of the agreement is ambiguous and the parties' intentions cannot be determined from the writing alone." *Miller v. Schwartz*, 354 N.W.2d 685, 689 (N.D.1984). "On appeal, this [C]ourt will independently review the contract to determine whether it is ambiguous." *International Harvester*, at 801. "[A]n unambiguous contract is particularly amenable to summary judgment." *Garofalo*, at ¶ 7.

[¶ 8] The language of the consent agreement in dispute is in Paragraph XX, where it states "[Meide] shall satisfy any monetary obligations owing to ... [EAS] ... within two years of the date of entry of judgment herein." Meide argues the language is ambiguous because an amount is not specified in the instrument. EAS argues the language is unambiguous because Meide received bills for the abatement work as it was completed and did not dispute them.

[¶ 9] Reasonable people could make rational arguments in support of contrary positions as to whether the words "shall satisfy any monetary obligations owing" covers the entire amount billed to Meide by EAS. Paragraph XX is, therefore, ambiguous with respect to the amount owed, and presents a genuine issue of material fact precluding summary judgment.

[¶ 10] A reasonable person could rationally argue the absence of a specific amount in the consent agreement means the amount owed to EAS was disputed or open to negotiation. The amount billed by EAS was known to both the State and Meide. When the consent agreement was signed in January of 1999, EAS had submitted bills to Meide in March and May of 1998 for the two rounds of abatement work. In oral argument, when questioned why an amount was not put in the consent agreement, the State conceded the language was used because it knew Meide would pay some of the billed amount and would contest the remainder. EAS, in oral argument, stated the language of the consent agreement meant Meide had to pay what was reasonable. When the billed amount is known, but that amount is not put into the consent agreement, a reasonable person could argue the amount Meide owed was disputed or negotiable.

[¶ 11] Conversely, the use of the word "any" suggests an intention to require Meide to pay whatever amount was billed by EAS. "The word 'any' is expansive, not

restrictive." *Pamida, Inc. v. Meide*, 526 N.W.2d 487, 493 (N.D.1995) (noting the definition of "any" as " '1: one indifferently out of more than two: one or some indiscriminately of whatever kind ... c: one or some of whatever kind or sort; ... 2: one, some, or all indiscriminately of whatever quantity: ... 3a: great, unmeasured, or unlimited in amount, quantity, number, time, or extent....' "). Thus, a reasonable person could rationally argue the amount billed to Meide by EAS, no matter what it is, falls within the ambit of the phrase "shall satisfy any monetary obligations owing."

[¶ 12] Because reasonable people could make rational arguments in support of contrary positions about the meaning of "any monetary obligations owing," the intent of the contracting parties, the State and Meide, is a question of fact, rendering summary judgment inappropriate. *See id.; see also Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778, 780 (N.D.1984).

### III

[¶ 13] Alternatively, the State and EAS argue Meide is barred from challenging the amount owed under the doctrine of judicial estoppel. The United States Supreme Court has set out factors which help a court determine whether the doctrine applies in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," .... Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determina-

tions," ... and thus poses little threat to judicial integrity.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped....

> In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.

*New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

[¶ 14] The State and EAS contend Meide's filing of the declaratory judgment action to determine the proper amount of compensation owed to EAS is inconsistent with the signing of the consent agreement, in which Meide agreed to "satisfy any monetary obligations owing." Meide argues the doctrine of judicial estoppel does not apply because his position in the declaratory judgment action is not inconsistent with his position in the consent agreement. Meide contends the issue in the consent agreement was whether he violated environmental laws, and the appropriate punishment for any violation, while in the declaratory judgment action the issue was the amount owed for the asbestos abatements.

[¶ 15] This Court has stated the following with regard to judicial estoppel:

> We have never adopted the doctrine of judicial estoppel in this state. Judicial estoppel prohibits a party from assuming inconsistent or contradictory positions during the course of litigation. *See State v. Profit*, 591 N.W.2d 451, 462 (Minn.1999); 28 Am.Jur.2d *Estoppel and Waiver* § 74 (2000); 31 C.J.S. *Estoppel*

*and Waiver* § 139(a) (1996). The underlying rationale for the doctrine is summarized in 28 Am.Jur.2d *Estoppel and Waiver* § 74 (footnotes omitted):

> The fundamental concept of judicial estoppel is that a party in a judicial proceeding is barred from denying or contradicting sworn statements made therein. Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts, and to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.

The doctrine applies only where a party's subsequent position is totally inconsistent with its original position, and does not apply where distinct or different issues or facts are involved. *Profit*, 591 N.W.2d at 462; 28 Am.Jur.2d *Estoppel and Waiver* § 74; 31 C.J.S. *Estoppel and Waiver* § 139(a).

*BTA Oil Producers v. MDU Resources Group*, 642 N.W.2d 873, 2002 ND 55, ¶ 14. Assuming, without deciding, the doctrine of judicial estoppel applies in this state, we conclude the doctrine would not bar Meide's action for a declaratory judgment because the position taken by Meide is not inconsistent with the position he took in signing the consent agreement. The consent agreement does not specify an amount owed to EAS. The declaratory judgment action seeks to resolve this undecided issue. This does not conflict, and is consistent, with one of the possible interpretations of the consent agreement. Because the consent agreement is ambiguous, the district court erred in determining the doctrine of judicial estoppel prevented Meide from bringing the declaratory judgment.

IV

[¶ 16] Because genuine issues of material fact exist regarding the amount of compensation owed to EAS for asbestos abatement, the district court erred as a matter of law in granting summary judgment. The district court also erred in applying the doctrine of judicial estoppel to the declaratory judgment action. We reverse and remand for further proceedings consistent with this opinion.

[¶ 17] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.