2015 ND 127

**Louise BROTEN and Linda Schuler, in their individual capacities as co-Personal Representatives of the Estate of Helen Broten, deceased, Plaintiffs and Appellees**

**v.**

**James BROTEN, in his individual capacity, and as Personal Representa-** **tive of the Estate of Olaf Broten, deceased, Defendant and Appellant.**

**No. 20140177.**

Supreme Court of North Dakota.

May 27, 2015.

David J. Smith, Bismarck, ND, for plaintiffs and appellees.

Douglas W. Murch, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] James Broten appealed from a judgment and amended judgment, following a bench trial, finding that as personal representative to Olaf Broten's estate, he had breached his fiduciary duties by transferring real property to himself, and awarding Louise Broten damages in the amount of the fair market value of the property. We affirm and remand for further proceedings.

I

[¶ 2] James Broten, Louise Broten, and Linda Schuler are the children of Olaf Broten and Helen Broten ("the parents"). The parents originally owned approximately 480 acres of farmland in Barnes County. In 1979, they executed a quitclaim deed granting the father sole ownership of the farmland, and also entered into a contract for deed with James Broten agreeing to convey him the farmland for $200,000 plus six percent interest paid annually through 2006. The contract for deed was prepared by James Broten's attorney but never recorded. Also in 1979, the parents each executed a last will and testament in which the farmland was to be placed in trust, with the mother receiving the income for life, and the principal distributed equally to the children upon her death.

[¶ 3] James Broten testified that all parties agreed to orally modify the 1979 contract for deed in 1980. The new terms allegedly required him to pay the living expenses for the parents for the remainder of their lives as well as a payment of

$12,000 annually per year in interest. He testified that the $12,000 payment was not always a cash payment and varied from year to year, including his occasionally selling grain or hay and instructing the buyer to pay the proceeds to the father. James Broten had paid living expenses of his parents prior to the oral modification, but argues those payments were gratuitous while the payments after 1980 were consideration for the oral modification.

[¶ 4] James Broten and the father were active in farming and shared equipment and labor throughout the alleged contract period. James Broten claimed the parents pledged certified deposit accounts as collateral for his farm operation loan. He also testified that he made improvements to the farmstead, and the father was only active in a separate farming operation through a rental agreement with a neighboring landowner, and he exclusively farmed the contested property.

[¶ 5] After his father's death, James Broten was appointed as personal representative of his estate. He obtained written waivers of appointment from the mother and his siblings granting him the right to waive all rights of service of notice from his actions, including an inventory and final accounting of the estate. He filed an informal probate of the father's will and conveyed the farmland to himself with his mother receiving a life estate. The deed was recorded. He continued to pay for his mother's living expenses until her death in 2010, but he occasionally withdrew funds from his mother's checking account.

[¶ 6] After the mother's death in 2010, the sisters were appointed the co-representatives of the mother's estate. Louise Broten became aware of James Broten's conveyance of the farmland to himself. The sisters, as personal representatives and individually, sued James Broten for alleged breach of his fiduciary duty to the

father's estate, conversion, deceit, and breach of contract.

[¶ 7] The district court found James Broten and his father had abandoned the written contract and dismissed the breach of contract claim. The district court also held James Broten failed to prove partial performance of the alleged oral contract sufficient to avoid the statute of frauds, and the land transfer was void as a breach of his fiduciary duty. At a hearing to determine the status of title and remedies, the district court awarded the mother's estate $103,054 in damages for use of the property following her death, and $1,197,000 for the current value of the property as of December, 2013. An amended judgment was entered awarding the above damages as well as $1,800.70 in sanctions and $2,155.75 in costs and disbursements.

II

[¶ 8] James Broten argues the district court erred in finding no oral contract exists under the doctrine of part performance. He asserts that the interest and living expense payments made to the parents are clear and unambiguous evidence of an oral contract not explained by alternative theories. He also argues that he took exclusive or primary possession of the property, made substantial improvements to the property, maintained an expectation of owning the property, and the district court's findings to the contrary are clearly erroneous.

[¶ 9] "The existence of an oral contract is a question of fact." *In re Estate of Thompson*, 2008 ND 144, ¶ 10, 752 N.W.2d 624. "In an appeal from a judgment entered after a bench trial, a district court's findings of fact are reviewed under the clearly erroneous standard of N.D.R.Civ.P. 52(a)." *Id.* "A finding of fact

is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.* "A district court's choice between two permissible views of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court." *Id.* "We give due regard to the district court's opportunity to assess the witnesses' credibility, and we do not second guess the court on its credibility determinations nor do we reweigh the evidence." *Id.*

[¶ 10] North Dakota requires all contracts for the sale of real property be in writing. N.D.C.C. § 9–06–04. A court may compel the specific performance of an oral agreement for the sale of real property in the case of part performance. N.D.C.C. § 47–10–01. "In order to succeed on a claim of part performance, the claimant must show that the alleged part performance is consistent only with the existence of the alleged oral contract." *Trosen v. Trosen,* 2014 ND 7, ¶ 24, 841 N.W.2d 687. "[T]he acts relied upon as constituting part performance must unmistakably point to the existence of the claimed agreement." *In re Estate of Thompson,* 2008 ND 144, ¶ 13, 752 N.W.2d 624. "Part performance of an oral contract must be consistent only with the existence of the alleged oral contract," and "[v]aluable, substantial, and permanent improvements may be considered part performance" unless "the improvements indicate some other relationship, such as a landlord and tenant relationship, or can be accounted for through the application of some other hypothesis." *Id.* at ¶ 12. "Cases accepting the doctrine of part performance have recognized three major categories of acts by the purchaser that may

make an oral contract enforceable: paying the contract price, taking possession of the property, and making improvements." *Johnson Farms v. McEnroe,* 1997 ND 179, ¶ 18, 568 N.W.2d 920.

[¶ 11] James Broten argues he paid the contract price through payment of the parents' living expenses and interest payments. He also claims to have taken possession of the property, and his installment of improvements on the property demonstrate part performance. The district court determined those actions were equally explained under an express or implied joint farming operation.

[¶ 12] The district court found that while James Broten did pay the parents' living expenses, he paid those same expenses prior to the written contract, and the payments can be explained as a continuation of that gratuitous support, or alternatively explained as a business deduction because they were paid from the Broten Farms bank account. The district court also found the interest payments were not actual cash payments and instead were made in a manner to avoid tax liability. The tax advantage James Broten received in transferring money this way was an equally likely reason for the payments and not clear and unequivocal evidence of the alleged oral contract. The district court also found the father and James Broten farmed jointly, and the claim of possession and improvements to the land are equally consistent with their joint farming operation because no evidence was presented showing James Broten's intention to exclusively possess the property or whether the father contributed to any improvements made to the property.

[¶ 13] We agree that the terms of the alleged contract can be explained by alternative theories, and James Broten has not provided clear and unequivocal evidence establishing the terms, character, and exis-

tence of the contract. Because we do not reweigh the evidence or question the district court's credibility determinations, there is evidence in the record that supports the district court's findings. We are not left with a definite and firm conviction the court made a mistake in its findings, and conclude that the finding no oral contract exists is not clearly erroneous.

### III

[¶14] James Broten argues that under the doctrines of judicial estoppel and election of remedies, the district court improperly voided the land transaction he made to himself as personal representative of the father's estate while also awarding monetary damages to the mother's estate.

[¶15] "Judicial estoppel is a doctrine designed to protect the integrity of the judicial process by 'prohibit[ing] a party from assuming inconsistent or contradictory positions during the course of litigation.'" *In re Estate of Harms*, 2012 ND 62, ¶10, 814 N.W.2d 783 (quoting *Meide v. Stenehjem*, 2002 ND 128, ¶15, 649 N.W.2d 532). We have previously relied on factors outlined by the United States Supreme Court in determining the doctrine's application, while recognizing there is not "an exhaustive formula for determining [its applicability]." *Id.* These factors are:

> First, a party's later position must be "clearly inconsistent" with its earlier position.... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," .... Absent success in a prior proceeding, a party's later inconsistent position introduces no

"risk of inconsistent court determinations," ... and thus poses little threat to judicial integrity.... A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped...."

*Meide*, 2002 ND 128, ¶13, 649 N.W.2d 532 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). Judicial estoppel will not bar litigating parties from choosing alternative forms of relief. *Harms*, 2012 ND 62, ¶11, 814 N.W.2d 783 (citing N.D.R.Civ.P. 8(e)(2)-(3)). "Judicial estoppel will not be recognized until a court accepts one of those alternatives." *Id.*

[¶16] "The doctrine of election of remedies is applied when three elements are present: (1) the existence of two or more remedies; (2) inconsistency between the remedies; and (3) the choice of one remedy." *Grand Forks Professional Baseball, Inc. v. North Dakota Workers Compensation Bureau*, 2002 ND 204, ¶15, 654 N.W.2d 426. "A trial court does not abuse its discretion by postponing the election of remedies until final judgment is entered." *Id.*

[¶17] The original complaint sought money damages for the alleged injuries caused by James Broten, and such other general relief deemed equitable and just. In Louise Broten's brief in support of motion for summary judgment, she again asks that the mother's estate be "awarded damages in the amount Helen Broten would have received under the terms of the contract, as an heir of Olaf Broten. In addition to damages caused by the actions of the defendant, plaintiff respectfully requests this Court to award costs and attorney fees for the willful misconduct of defendant along with other relief as this Court may deem equitable and just."

Louise Broten's post-trial brief sought to void the land transaction as a remedy, and did not seek monetary damages.

[¶ 18] In the district court's findings of fact and conclusions of law, it determined the "execution and recording of the Deed of Personal Representative constituted a conflict of interest transaction under N.D.C.C. § 30.1–18–13. The transaction is voidable by any person interested in Olaf Broten's estate who has not consented after fair disclosure." It further states "Louise brought this action to void the Deed within the period of the applicable statute of limitations.... The Deed is void as a conflict of interest transaction under N.D.C.C. § 30.1–18–13." A subsequent hearing was held on the status of the property's title and monetary remedies. Pre and post hearing briefs filed by Louise Broten sought monetary damages as a remedy. The January 22, 2014 memorandum opinion and order for judgment states, "Mr. Broten engaged in a voidable conflict-of-interest transaction when he executed the personal representative's deed transferring three quarters of the land owned by the estate to himself." The district court subsequently awarded monetary damages.

[¶ 19] Section 30.1–18–13, N.D.C.C., states, "Any sale or encumbrance to the personal representative ... in which the personal representative has a substantial beneficial interest ... is voidable by any person interested in the estate except one who has consented after fair disclosure." The statutory term "void" is distinguishable from "voidable" as any contract deemed void fails as an illegal contract, while a voidable contract may fail only after the election of one of the parties. *Abraham v. Durward,* 46 N.D. 611, 617, 180 N.W. 783, 786 (1920). Because the law provides for two different remedies, monetary damages or declaring the land trans-

fer void, only one remedy can be elected. Louise Broten originally sought monetary damages, and in her post-trial brief sought to void the land transfer. After the district court determined the state of title and scheduled a subsequent hearing on the issue of damages, she again sought monetary damages. No final decision on the award of a remedy was made prior to that hearing. Because alternative remedies had not been decided, and the issue of determining an appropriate remedy was postponed to a subsequent hearing, the doctrines of judicial estoppel and election of remedies do not bar an award of monetary damages. The opinion and order for judgment correctly states the transaction as voidable while awarding monetary damages.

[¶ 20] James Broten also argues the district court erred by allowing Louise Broten to seek monetary damages based on the fair market value of the property after she sought damages based on a breach of contract claim. Her breach of contract claim and claim for damages from breach of a fiduciary duty are not barred under the doctrine of judicial estoppel. The district court found that the parents and James Broten mutually agreed to abandon the terms of the written contract for deed based on the parents' knowledge that James Broten was not making the payments required and took no action to enforce the contract. For the doctrine of judicial estoppel to apply, the claim must be successful. Because the district court found the contract for deed to be abandoned, the breach of contract claim was not successful, and Louise Broten could pursue the alternative breach of fiduciary duty claim.

[¶ 21] Section 30.1–18–12, N.D.C.C., states, "[i]f the exercise of power concerning the estate is improper, the personal representative is liable to interested per-

sons for damage or loss resulting from breach of the personal representative's fiduciary duty to the same extent as a trustee of an express trust." "To remedy a breach of trust . . . the court may compel the trustee to perform the trustee's duties; enjoin the trustee from committing a breach of trust; compel the trustee to redress a breach of trust by paying money, restoring property, or other means. . . ." N.D.C.C. § 59–18–01(2). "A trustee who commits a breach of trust is liable to the beneficiaries affected for the greater of the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred or the profit the trustee made by reason of the breach." N.D.C.C. § 59–18–02(1). The district court concluded a breach of James Broten's fiduciary duty occurred, and awarded monetary damages based on the value of the trust property as if a breach had not occurred. The award of fair-market value money damages is not barred by judicial estoppel.

## IV

[¶ 22] James Broten argues the district court erred in failing to consider whether he was entitled to restitution or equitable relief in order to avoid unjust enrichment. We have previously held that a party barred by the Statute of Frauds from recovering on a contract may be entitled to restitution. *Smestad v. Harris*, 2012 ND 166, ¶ 13, 820 N.W.2d 363. "Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another." *Ritter, Laber and Associates, Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 26, 680 N.W.2d 634. "The doctrine serves as a basis for requiring restitution of benefits conferred 'in the absence of an expressed or implied in fact contract.' . . .

Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law." *Id.* (quoting *Midland Diesel Serv. & Engine Co. v. Sivertson*, 307 N.W.2d 555, 557 (N.D.1981)). A determination of unjust enrichment is a conclusion of law and fully reviewable on appeal. *Id.*

[¶ 23] The district court's findings stated "James has made substantial improvements on the family farmstead, and is entitled to compensation or an offset for the value of those improvements in the division and distribution of Olaf and Helen Broten's estate among the heirs." The district court's findings did not address payments made by James Broten to the parents for living expenses, or interest payments they declared as income. The subsequent order for judgment does not address any compensation owed to James Broten for improvements made to the property or payments to the parents. Having reviewed the record, we conclude the trial court did not determine what compensation is due to James Broten.

## V

[¶ 24] We affirm the district court's judgment finding a breach of fiduciary duty and award of monetary damages and we remand for further proceedings consistent with this opinion.

[¶ 25] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.