2017 ND 47

**Louise BROTEN and Linda Schuler, in their individual capacities and as co-Personal Representatives of the Estate of Helen Broten, deceased, Plaintiffs and Appellees**

v.

**James BROTEN, in his individual capacity, and as Personal Representative of the Estate of Olaf Broten, deceased, Defendant and Appellant**

No. 20160151

Supreme Court of North Dakota.

Filed 3/7/2017

David J. Smith (argued) and Tyler J. Malm (on brief), P.O. Box 460, Bismarck, N.D. 58502–0460, for plaintiffs and appellees.

Douglas W. Murch, P.O. Box 2686, Fargo, N.D. 58108–2686, for defendant and appellant.

Kapsner, Justice.

[¶ 1] James Broten, individually, and as personal representative of the estate of Olaf Broten, appeals from a second amended judgment denying him restitution for payments he made to his parents during their lifetimes. We affirm in part, reverse in part, and remand.

## I

[¶ 2] The relevant facts in this case are summarized in Broten v. Broten, 2015 ND 127, 863 N.W.2d 902, and we will not repeat them here except as necessary to resolve the issue raised in this appeal.

[¶ 3] In 1979, Broten and his parents Helen and Olaf Broten executed a contract for deed to purchase approximately 480 acres of farmland. Broten agreed to purchase the farmland for $200,000 plus six percent annual interest through 2006. After his father's death in 1998, Broten, as personal representative of the estate, conveyed the farmland to himself with his mother receiving a life estate.

[¶ 4] After Broten's mother died in 2010, his sisters, as personal co-representatives of the estate, sued Broten alleging he breached his fiduciary duties by transferring the farmland to himself after his father's death. At trial in 2013, Broten testified that under an oral modification to the contract, he agreed to pay his parents' living expenses for the rest of their lives in

addition to the $12,000 annual interest payment in exchange for the farmland. Broten submitted documents showing he made the payments to his parents or on their behalf.

[¶ 5] After trial the district court found the parties mutually agreed to abandon the terms of the written contract for deed. The court also found Broten did not prove the oral modification to the contract and breached his fiduciary duties to his father's estate by transferring the farmland to himself. The court ordered Broten to pay $1,197,000 for the value of the farmland as of December 2013.

[¶ 6] This Court affirmed the judgment finding a breach of fiduciary duty and award of damages, but remanded to the district court to decide whether Broten was entitled to compensation for improvements he made to the farmland or for payments he made to his parents or on their behalf. Broten v. Broten, 2015 ND 127, ¶¶ 23–24, 863 N.W.2d 902.

[¶ 7] On remand, Broten relied on evidence submitted at trial and argued he paid over $342,000 to his parents and made $20,000 in improvements to the farmland. Broten argued his parents benefited from the annual interest payments and his payments for their health, home and auto insurance premiums and utility bills. The district court entered a second amended judgment reducing the amount Broten owed by $20,000 for improvements he made to the property. The court did not award Broten restitution for the payments he made to his parents or on their behalf. The court concluded Broten benefited from the relationship with his parents and failed to prove his parents were unjustly enriched by the payments he made to them or on their behalf.

## II

[¶ 8] Broten argues the district court erred in denying him restitution for payments he made to his parents or on their behalf. Broten argues the court erred in concluding his parents were not unjustly enriched by his payments.

[¶ 9] We discussed unjust enrichment in Hayden v. Medcenter One, Inc., 2013 ND 46, ¶ 14, 828 N.W.2d 775:

Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. The doctrine is applied in the absence of an express or implied contract. Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law. The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.

(Citations omitted.)

[¶ 10] A determination of unjust enrichment is a conclusion of law "because it holds that a certain state of facts is contrary to equity," and therefore, a district court's determination whether there has been unjust enrichment is fully reviewable. Matter of Estate of Zent, 459 N.W.2d 795, 798 (N.D.1990). The court's findings of fact supporting its unjust enrichment determination are subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). Id. A finding of fact is clearly erroneous if there is no evidence to support it, or if, based on the entire record, we are left with a definite and firm conviction a mistake has been made. Werven v. Werven, 2016 ND 60, ¶ 11, 877 N.W.2d 9.

[¶ 11] Broten argues he provided a substantial benefit to his parents by paying $342,054.52 toward their personal living expenses and making interest payments to them, which they declared as income.

[¶ 12] After trial the district court found Broten and his father were engaged in a joint farming operation that included sharing labor, machinery, and expenses. The court found Broten's payments for his parents' electricity bills and home and auto insurance premiums were included in the farm's overall electric bill and umbrella insurance policies. The court found those payments were deductible business expenses. The court found that after his father's death, Broten and his mother "regularly commingled and transferred assets to further the farming enterprise." The court found Broten withdrew funds from his mother's bank account and used his mother's certificates of deposit as collateral in order to obtain better interest rates on operating loans.

[¶ 13] On remand the district court concluded Broten failed to prove the payments to his parents benefited them to his detriment. The court indicated Broten did not submit evidence showing the net effect of the financial relationship with his parents. The court stated, "The evidence clearly shows that 'enrichment' and 'impoverishments' flowed both ways between James Broten and his parents, but James contends the court should simply ignore one side of the equation."

■ [¶ 14] We agree with the district court's analysis regarding some of the payments Broten made for his parents. Broten's payments for the utility bills and home and auto insurance as part of the overall farm expenses could be deducted from his taxes, and Broten failed to provide an accounting showing the net effect of these payments. The court's findings that these payments were related to a joint farming operation are supported by the record and are not clearly erroneous. These payments can be explained as part of a joint farming operation; we therefore conclude the court did not err in denying Broten restitution for these payments.

■ [¶ 15] Although Broten may have also benefited from some of the payments to his parents, we disagree with the district court's ultimate conclusion that Broten "has not established that he is entitled to any restitution on grounds of unjust enrichment." The court overlooked and failed to fully address Broten's annual interest payments related to the parties' contract for the purchase of the farmland and the health insurance premium payments.

[¶ 16] The written contract for deed and the alleged oral modification to the contract for the purchase of the farmland required Broten to make $12,000 annual interest payments. Broten testified he made these payments totaling $180,000 from 1983 until his father's death in 1998. Broten also submitted his parents' tax returns from 1983, 1986–1995, and 1998 showing $12,000 of "other farm income" or "other interest income" from Broten. He testified many of the payments were made in-kind instead of paying cash. The in-kind payments consisted of him selling his grain or hay and instructing the buyer to pay the proceeds to his father.

[¶ 17] The district court found the parties abandoned the contract for deed and Broten did not prove the oral modification to the contract to purchase the farmland. The court ordered Broten to pay $1,197,000 for the value of the land as of December 2013. On remand the court addressed Broten's annual interest payments:

As James argues, this figure would seem to be a reasonable extrapolation from

Olaf's tax returns, which show he reported $12,000 per year in "interest income" from James. However ... James testified that many, or even most, of those payments were not actually made. Rather than making cash payments, he testified "we moved things around" in order to maximize Olaf's income.

[¶ 18] The district court misstated Broten's testimony regarding the interest payments. Broten testified that although most of the payments were not cash payments, he made in-kind payments of $12,000 a year by selling grain or hay with the proceeds paid to his father. Regardless of whether the payments were in cash or in-kind, Broten's parents reported the $12,000 annual payments as income on their tax returns. On the basis of the entire record, we are left with a definite and firm conviction the court made a mistake in its findings regarding the annual interest payments. The interest payments totaling $180,000 enriched Broten's parents to his detriment and are not related to a joint farming enterprise. Because the court ordered Broten to pay the full value of the farmland, we conclude the court erred in denying Broten restitution for the annual interest payments related to the purchase of the land, and equity requires awarding him restitution for those payments.

[¶ 19] The district court also erred in failing to recognize the benefit of Broten's payments for his parents' health insurance premiums. The court failed to address the health insurance payments on remand, and we can discern nothing in the record disclosing the reason for failing to address those payments. Broten testified he paid for his parents' health insurance from the late 1970s until his mother died. Broten testified the policy only covered his parents and never lapsed. Broten's evidence showed he paid $49,609.20 in health insurance premiums from 1978 until his mother's death in 2010; however, Broten estimated approximately $38,000 of that amount on the basis of actual payments made. Broten submitted bank account information indicating he made actual payments of $11,789.40 toward his parents' health insurance premiums. Similar to the interest payments, we conclude Broten's payments for his parents' health insurance premiums are not related to a joint farming enterprise and he is entitled to restitution in the amount of $11,789.40.

[¶ 20] We affirm the judgment holding James Broten has breached his fiduciary duty, and shall pay to plaintiffs the sum of $103,054 as compensation for his use of the land from June 16, 2010, through December 31, 2013, including interest, $1,800.70 in accordance with the July 21, 2014 order, and costs and disbursement of $2,155.75. We affirm the judgment holding the reduction of the land value by $20,000 for improvements to the land. We reverse the judgment holding James Broten is not entitled to any restitution and remand for entry of judgment requiring James Broten to pay to plaintiffs as Personal Representatives of the Estate of Helen Broten the sum of $1,197,000 for the value of the land as of December 31, 2013, reduced by $191,789.40 for restitution and $20,000 for improvements for a net payment of $985,210.60.

### III

[¶ 21] We affirm in part, reverse in part, and remand for entry of judgment in accordance with this opinion and N.D.R.Civ.P. 58(a)(1).

[¶ 22] Carol Ronning Kapsner

Lisa Fair McEvers

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

I concur in the result.

Dale V. Sandstrom, S.J.

[¶ 23] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.