# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 227

In the Matter of the Estate of Ruth Finstrom, Deceased

Heartland Trust Company c/o Jon Benson,
Personal Representative of
The Estate of Ruth Finstrom,                           Petitioner and Appellee

    v.

Joel Finstrom and James Finstrom,             Respondents and Appellants

    and

Daniel Finstrom, Janice Schulz, and

Mark Finstrom,                                      Respondents and Appellees

    and

Rebecca Lusk and Annette Hauser,                               Respondents

    and

Teresa Finstrom,                                        Claimant and Appellee

### No. 20190360

In the Matter of the Estate of Ruth Finstrom, Deceased

Heartland Trust Company c/o Jon Benson,
Personal Representative of
The Estate of Ruth Finstrom,                           Petitioner and Appellee

    v.

Joel Finstrom,                                                        Respondent

and

Annette Hauser and James Finstrom,                      Respondents and Appellants

    and

Daniel Finstrom, Janice Schulz, and

Mark Finstrom,                                          Respondents and Appellees

    and

Rebecca Lusk,                                                         Respondent

    and

Teresa Finstrom,                                         Claimant and Appellee

---

No. 20190361

---

Appeal from the District Court of Traill County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Timothy G. Richard, Fargo, ND, for petitioner and appellee; submitted on brief.

Craig E. Johnson, Fargo, ND, for respondents and appellants Joel Finstrom, Annette Hauser and James Finstrom; submitted on brief.

Samuel G. Larson, Bismarck, ND, for respondents and appellees Daniel Finstrom and Janice Schulz and claimant and appellee Teresa Finstrom; submitted on brief.

Mark Finstrom, Chaparral, NM, respondent and appellee; submitted on brief.

**Estate of Finstrom**
**Nos. 20190360, 20190361**

**Crothers, Justice.**

[¶1]   Joel Finstrom, James Finstrom and Annette Hauser appeal from orders and a judgment denying their claims related to Ruth Finstrom's estate. We affirm.

I

[¶2]   Ruth and Carl Finstrom had seven children: James Finstrom, Daniel Finstrom, Joel Finstrom, Annette Hauser, Janice Schulz, Mark Finstrom, and Rebecca Lusk. In the late 1980s, Carl and Daniel Finstrom began farming together. According to trial testimony, Daniel Finstrom made oral agreements with his parents to acquire three quarters of real property. In 2011 Daniel Finstrom believed he had fulfilled the agreements, but Carl Finstrom requested an additional $240,000 for the property.

[¶3]   In August 2011, Ruth and Carl Finstrom executed identical wills. The wills devised one-third of a quarter section of property to Joel Finstrom, stating he had paid one-third of the price for the property. The quarter devised to Joel Finstrom was one of the quarters Daniel Finstrom believed he purchased. Carl Finstrom died in November 2011.

[¶4]   In December 2012, Ruth Finstrom executed a contract for deed conveying the three quarters of real property to Daniel and Teresa Finstrom for $240,000. Ruth Finstrom executed a new will in July 2015, devising the residue of her estate to her seven children in equal shares. In July 2016, Ruth Finstrom conveyed additional real property to her daughter Janice Schulz. Ruth Finstrom died in December 2016.

[¶5]   In December 2016, the district court admitted Ruth Finstrom's 2015 will to informal probate and appointed James Finstrom personal representative. In March 2017, Joel Finstrom filed a claim against the estate, asserting the estate owed him $200,000 for the value of an interest he owned in Ruth Finstrom's real property. Joel Finstrom also claimed the estate owed him $2,000 per

month for providing Ruth Finstrom in-home health care from May 1, 2015, to April 21, 2016.

[¶6]   In May 2017, Mark Finstrom petitioned for the removal of James Finstrom as personal representative. In September 2017, James Finstrom, individually and as personal representative, sued Schulz and Daniel and Teresa Finstrom seeking to invalidate the real property conveyances Ruth Finstrom made to them. James Finstrom argued Ruth Finstrom was unduly influenced in conveying the property. Schulz and Daniel and Teresa Finstrom denied the claims and counterclaimed, arguing James Finstrom breached his fiduciary duties to the estate. James Finstrom resigned as personal representative and Heartland Trust Company was appointed as successor personal representative.

[¶7]   The district court held a two-day trial in January 2019 on the claims in the complaint and counterclaim. Joel Finstrom also agreed to have his claim that he owned an interest in Ruth Finstrom's real property decided at trial. All of Ruth Finstrom's children were present at trial except Rebecca Lusk.

[¶8]   On March 12, 2019, the district court issued its findings of fact, conclusions of law and order for judgment. The court ruled Ruth Finstrom's 2015 will was valid and revoked her 2011 will. The court denied Joel Finstrom's claim he had an interest in Ruth Finstrom's real property, and upheld Ruth Finstrom's conveyances to Schulz and Daniel and Teresa Finstrom. The court found Ruth Finstrom did not lack mental capacity to make the conveyances. The court also found Daniel and Teresa Finstrom did not have a confidential relationship with Ruth Finstrom, and Ruth Finstrom was not unduly influenced.

[¶9]   In April 2019, Joel Finstrom petitioned the district court for an order allowing his earlier claims relating to his interest in Ruth Finstrom's real property and the care he provided her before her death. In July 2019, Annette Hauser petitioned the court for formal probate of Ruth Finstrom's 2011 will, arguing she lacked testamentary capacity to execute her 2015 will.

[¶10] After a hearing on the petitions in September 2019, the district court denied Joel Finstrom's claim that he owned an interest in Ruth Finstrom's real property. The court concluded that issue was decided at trial. The court partially granted the remainder of his claim, finding he was entitled to $6,000 from the estate for the care he provided his mother before her death. The court also denied Annette Hauser's petition for formal probate, concluding her claim related to Ruth Finstrom's testamentary capacity was decided at trial. In November 2019, the court entered a final judgment disposing of James Finstrom's claims.

## II

[¶11] James Finstrom argues the district court erred in denying his claims against Daniel and Teresa Finstrom. He argues the court erred in ruling Daniel and Teresa Finstrom did not unduly influence Ruth Finstrom. He argues the court erred in concluding Daniel and Teresa Finstrom were not unjustly enriched at the expense of Ruth Finstrom. He also claims the court erred in admitting parol evidence relating to the contract for deed between Ruth Finstrom and Daniel and Teresa Finstrom.

## A

[¶12] James Finstrom argues the district court clearly erred in finding Daniel and Teresa Finstrom did not have a confidential relationship with Ruth Finstrom and did not unduly influence her. He claims Ruth Finstrom was unduly influenced because she sold the property for much less than what it was worth.

> "In cases involving nontestamentary transactions, this Court has defined undue influence as 'improper influence [ ] exercised over the grantor . . . in such a way and to such an extent as to destroy his free agency or his voluntary action by substituting for his will the will of another.' In nontestamentary cases, this Court has held '[a] finding of undue influence . . . requires that three factors be established: (1) A person who can be influenced; (2) The fact of improper influence exerted; and (3) Submission to the overmastering effect of such unlawful conduct.'"

3

*Nelson v. Nelson*, 2018 ND 212, ¶ 7, 917 N.W.2d 479 (quoting *Erickson v. Olsen*, 2014 ND 66, ¶ 26, 844 N.W.2d 585) (citations omitted). "Undue influence may be proven by circumstantial evidence because direct evidence is rarely available." *Nelson*, at ¶ 9.

[¶13] Whether undue influence exists generally is a question of fact which will not be overturned on appeal unless it is clearly erroneous. *Nelson*, 2018 ND 212, ¶ 7. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Vig v. Swenson*, 2017 ND 285, ¶ 14, 904 N.W.2d 489. In a bench trial, the district court determines credibility issues, which will not be second-guessed on appeal. *Id.*

[¶14] "A confidential relationship exists whenever trust and confidence is reposed by one person in the integrity and fidelity of another, and that such relationship is a fact to be established in the same manner and by the same kind of evidence as any other fact is proven." *Estate of Bartelson*, 2015 ND 147, ¶ 16, 864 N.W.2d 441 (quoting *Estate of Dinnetz*, 532 N.W.2d 672, 674 (N.D. 1995)). A person who voluntarily assumes a confidential relationship becomes a trustee, and any transaction between the trustee and the trustee's beneficiary by which the trustee gains an advantage is presumed to be made under undue influence. *Bartelson*, at ¶ 16.

[¶15] The district court found a confidential relationship did not exist between Daniel and Teresa Finstrom and Ruth Finstrom. The court found "the Claimants failed to adduce sufficient evidence to establish such a relation, other than the fact of a familial relationship. This alone does not give rise to a confidential relationship." The court found that in 2010, Daniel and Teresa Finstrom stopped contacting Carl and Ruth Finstrom after they refused to convey the property on the basis of their earlier agreements. The court found that Ruth Finstrom approached Daniel and Teresa Finstrom about the 2012 contract for deed.

[¶16] Additionally, the district court found Daniel and Teresa Finstrom did not unduly influence Ruth Finstrom into signing the 2012 contract for deed. The

4

court found Ruth Finstrom approached Daniel and Teresa Finstrom about the contract for deed, which was drafted in Ruth Finstrom's favor. The court found an attorney witnessed the execution of the contract and he had no notes mentioning undue influence.

[¶17] The district court addressed James Finstrom's contention that Ruth Finstrom sold the property for far less than what it was worth. James Finstrom submitted an appraisal valuing the property at $1,360,000 as of July 2018. The parties executed the contract for deed in December 2012 for $240,000. The court stated, "While some evidence was presented to the Court that the purchase price paid by Daniel and Teresa to Ruth was below market value, one also needs to consider the value of Daniel working the land for decades and that a parent may favor one child over another."

[¶18] The mere fact that a parent deeds property to a child, or that some children are favored to the exclusion of others, does not raise a presumption of undue influence. *Johnson v. Johnson*, 85 N.W.2d 211, 225 (N.D. 1957). James Finstrom did not present sufficient evidence showing Teresa and Daniel Finstrom had a confidential relationship with Ruth Finstrom, or that they unduly influenced Ruth Finstrom into executing the contract for deed. The district court's findings have support in the record, and we are not left with a definite and firm conviction a mistake was made.

B

[¶19] James Finstrom asserts the district court erred in concluding Daniel and Teresa Finstrom were not unjustly enriched at the expense of Ruth Finstrom or her estate.

[¶20] A determination of unjust enrichment is a conclusion of law because it holds that a certain state of facts is contrary to equity, and therefore, a district court's conclusion of whether there has been unjust enrichment is fully reviewable. *Broten v. Broten*, 2017 ND 47, ¶ 10, 890 N.W.2d 847. The court's findings of fact supporting its unjust enrichment conclusion are subject to the clearly erroneous standard of review. *Id.*

[¶21] Unjust enrichment is a broad, equitable doctrine resting upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching herself at the expense of another. *Broten*, 2017 ND 47, ¶ 9. The essential element in recovering under the doctrine is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value. *Id.* "[I]t is well-settled that unjust enrichment applies only in the absence of a contract between the parties, and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter." *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 28, 680 N.W.2d 634.

[¶22] Here, a contract existed between Daniel and Teresa Finstrom and Ruth Finstrom for the three quarters of real property. Additionally, the district court found "Daniel and Teresa [Finstrom] set forth credible evidence that Carl and Ruth [Finstrom] were enriched by the receipt of profits, labor, and expenditures by Daniel and Teresa [Finstrom] dating back to 1989, and culminating in a final cash payout in 2014."

[¶23] The district court did not err in concluding Daniel and Teresa Finstrom were not unjustly enriched.

C

[¶24] James Finstrom contends the district court erred in admitting and considering parol evidence relating to the contract for deed between Ruth Finstrom and Daniel and Teresa Finstrom. James Finstrom asserts the court erred in considering evidence of the parties' oral agreements before executing the contract for deed.

[¶25] Under N.D.C.C. § 9-06-04(3), an agreement for the sale of real property is invalid unless the agreement is in writing and subscribed by the party to be charged. In construing a written contract, parol or extrinsic evidence may not be admitted to add to or vary the terms of the contract or to supply a missing essential term of the agreement; however, parol evidence may be received to explain and make certain the existing terms of the agreement as set forth in the contract. *Zitzow v. Diederich*, 337 N.W.2d 799, 802 (N.D. 1983) (citing

6

*Johnson v. Auran*, 214 N.W.2d 641, 653 (N.D. 1974)). Parol evidence is also "admissible to show the inducement for entering a contract." *Citizens State Bank-Midwest v. Symington*, 2010 ND 56, ¶ 20, 780 N.W.2d 676. "The decision to admit parol evidence is a determination of law and is fully reviewable on appeal." *Id.*

[¶26] Over James Finstrom's objection at trial, the district court allowed Daniel and Teresa Finstrom to testify about their earlier oral agreements with Carl and Ruth Finstrom relating to the purchase of the three quarters of property. Daniel Finstrom testified that in 1989 he began farming with Carl Finstrom with the intention of acquiring the property. Daniel Finstrom believed he had fulfilled the terms of the oral agreements to purchase the property until 2011, when Carl Finstrom requested an additional $240,000. Daniel Finstrom testified he initially refused to pay his father the additional money. He testified he and Teresa Finstrom agreed to pay the $240,000 after Carl Finstrom died and Ruth Finstrom suggested executing a contract for deed for the property.

[¶27] The district court did not err in admitting the testimony relating to the oral agreements for the purchase of the property. The testimony was not used to add to or vary the contract for deed's terms. Rather, the testimony explained the circumstances surrounding the contract and the reasons for executing the contract.

### III

[¶28] Joel Finstrom argues the district court lacked subject matter jurisdiction over his claim against Ruth Finstrom's estate because it was not properly before the district court at trial. He claims the court erred in concluding Ruth Finstrom's 2011 will did not create a trust in his benefit. He also argues the court erred in concluding res judicata barred a portion of his April 2019 petition for allowance of claim.

[¶29] Joel Finstrom argues the district court lacked subject matter jurisdiction over his claim against Ruth Finstrom's estate relating to his one-third interest in her real property because it was not properly before the district court at trial. He argues his claim was not tried by consent, and the only issues properly before the court at trial were the claims raised in James Finstrom's complaint against Schulz and Daniel and Teresa Finstrom, and the counterclaims by Schulz and Daniel and Teresa Finstrom against James Finstrom.

[¶30] For a district court to issue a valid order or judgment, the court must have jurisdiction over both the subject matter of the action and the parties. *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 10, 580 N.W.2d 583. "Subject-matter jurisdiction is the court's power to hear and determine the general subject involved in the action, while personal jurisdiction is the court's power over a party." *Id.* For subject matter jurisdiction to attach, the issue to be decided must be properly brought before the district court in the particular proceeding. *Id.* at ¶ 11. Issues involving subject matter jurisdiction cannot be waived and can be raised sua sponte at any time. *Garaas v. Cass Cty. Joint Water Res. Dist.*, 2016 ND 148, ¶ 4, 883 N.W.2d 436. When the jurisdictional facts are not in dispute, this Court reviews challenges to a district court's subject matter jurisdiction de novo. *Schweitzer v. Miller*, 2020 ND 79, ¶ 6, 941 N.W.2d 571.

[¶31] Under N.D.R.Civ.P. 15(b)(2), issues not raised in the pleadings may be tried by the parties' consent:

> "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. Failure to amend does not affect the result of the trial of that issue."

"[A]mendment by implication under N.D.R.Civ.P. 15(b) is limited to situations where the novelty of the issues sought to be raised is reasonably apparent and

the intent to try these issues is clearly indicated by failure to object or otherwise." *SolarBee, Inc. v. Walker*, 2013 ND 110, ¶ 13, 833 N.W.2d 422.

[¶32] In March 2017, Joel Finstrom's claim against the estate was filed with the district court under N.D.C.C. § 30.1-19-04. Joel Finstrom's claim that he had an interest in Ruth Finstrom's real property was related to the allegation in James Finstrom's complaint that Ruth Finstrom's 2011 will stated Joel Finstrom paid one-third of the price for a quarter of real property. James Finstrom's pretrial brief argued Ruth and Carl Finstrom's 2011 wills established that an express trust was created for Joel Finstrom's benefit in a one-third interest in a quarter of property. Six of the seven Finstrom siblings attended the trial, including Joel Finstrom. Testimony was presented on Joel Finstrom's claim.

[¶33] At trial, the personal representative's attorney stated it was the personal representative's hope "that the court will resolve all probate issues, including any claims that have been made against the estate." James Finstrom's attorney initially stated at trial "the question is whether or not the transfer to Daniel and Teresa Finstrom, as well as the transfer to Janice Schulz was done because of undue influence that was put upon the decedent, Ruth Finstrom, and I believe that's the only issue that's before the court at this time." The following discussion then occurred about Joel Finstrom's claim:

> "MR. JOHNSON: . . . I have a question with respect to Joel Finstrom. Is his claim part of this proceeding?
>
> THE COURT: As best I could tell, and I don't want to take forever trying to figure out what the issues are, but as best I can tell, they, Mr. Andrews, Ms. Champ and their clients believe that there are factual issues in dispute having to do with Joel Finstrom's claim as a creditor and also perhaps claim as you have advanced on behalf of your client, and you don't represent Joel, but of a trust in regards to this matter, so I do believe that that would be a factual issue. Is that a fair statement, Mr. Andrews?
>
> MR. ANDREWS: We don't believe there are any factual issues, Your Honor, as we've made abundantly clear, but clearly that

claim is—Joel's claim is part and parcel of what we're doing here. I mean, there is no question about that.

MR. JOHNSON: I guess the question is, is it res judicata against Joel, because I should probably talk to Joel if we're representing his interests to find out if he's willing to waive his right to a jury trial as well. A jury was requested in the complaint.

. . . .

THE COURT: . . . We left off, Mr. Johnson, where we were at. Mr. Johnson?

MR. JOHNSON: Yes. I spoke with Joel and he's willing to go forward to the extent that this may bind him and he's willing to go forward with a court trial.

THE COURT: And here in Cass County?

MR. JOHNSON: Here in Cass County.

THE COURT: Joel, that's okay with you?

JOEL FINSTROM: Yes.

THE COURT: Okay. And for the record, Mr. Joel Finstrom indicated yes, affirmative to the court's question."

[¶34] Joel Finstrom's claim was filed with the district court. James Finstrom's pretrial brief argued that Joel Finstrom held a one-third interest in a quarter of land owned by Ruth Finstrom. Joel Finstrom consented to having his claim decided at trial. Joel Finstrom's claim was properly before the court, and his claim was tried by the parties' consent under N.D.R.Civ.P. 15(b)(2).

B

[¶35] Joel Finstrom claims the district court erred in concluding Ruth Finstrom's 2011 will did not create an express trust in his benefit. He also contends the court erred in concluding an implied trust was not established.

10

[¶36] Whether a trust has been created is a question of fact. *Estate of Binder*, 386 N.W.2d 910, 912 (N.D. 1986). An express trust in real property must be created or declared by written instrument subscribed by the trustee or an authorized agent and cannot be created by parol evidence. N.D.C.C. § 59-12-18; *Binder*, at 912.

[¶37] "There are two types of implied trusts: resulting and constructive." *Spagnolia v. Monasky,* 2003 ND 65, ¶ 15, 660 N.W.2d 223. An implied trust must be established by clear and convincing evidence. *Id.* A resulting trust is "based on the implied intention of the parties," and "exists where the acts or expressions of the parties indicate an intent that a trust relation resulted from their transaction." *Id. See also Schrank v. Meade*, 145 N.W.2d 514, 517 (N.D. 1966) (stating a resulting trust is based upon the doctrine that valuable consideration was paid by one party, but legal title taken in another).

[¶38] "A constructive trust is an equitable remedy to compel a person who unfairly holds a property interest to convey it to the rightful owner." *Spagnolia*, 2003 ND 65, ¶ 15. A court may impose a constructive trust to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. *Scheid v. Scheid*, 239 N.W.2d 833, 838 (N.D. 1976).

[¶39] Joel Finstrom asserts Ruth and Carl Finstrom's 2011 wills created an express trust in his benefit on the basis of the following language:

> "(A). That during my lifetime, my son Joel paid for one-third of the NW¼ of Section 22 in Wold Township but did not take title to said one third of the parcel; therefore I give to my son Joel Finstrom, an undivided one-third share in the NW¼ of Section 22 in Wold Township."

[¶40] Joel Finstrom argued in the alternative that if the 2011 will did not create an express trust, an implied trust was established by clear and convincing evidence. He testified he suffered an accident as a child and received a settlement, which was used to purchase part of the property. He testified he did not know the amount of the settlement. Annette Hauser testified about Joel Finstrom's accident and stated the settlement money was

used to purchase property. James Finstrom testified Ruth and Carl Finstrom held a one-third interest in the property for Joel Finstrom's benefit.

[¶41] The district court found the 2011 wills did not create an express trust for Joel Finstrom's benefit. The court found there was no credible evidence showing that Ruth and Carl Finstrom contracted to hold the property in trust for Joel Finstrom. *See Hagen v. Schluchter*, 126 N.W.2d 899, 903 (N.D. 1964) (stating reciprocal wills "wholly testamentary in character cannot be considered as a memorandum of an irrevocable contract to devise property in accordance with its terms"). The court found Ruth Finstrom revoked her 2011 will by executing her 2015 will. *See* N.D.C.C. § 30.1-08-07(1)(a) ("A will or any part thereof is revoked . . . [b]y executing a subsequent will that revokes the previous will.").

[¶42] The district court also found Joel Finstrom's claim for an implied trust was not established by clear and convincing evidence. "Although a claim was made that there was some consideration from Joel in the form of an accident settlement years ago, no sufficient evidence was furnished by the Claimants to substantiate this claim." "The Court has no credible evidence as to the amount or value of said settlement." The court also found that while Ruth Finstrom's 2011 will expressed an intention to devise certain property to Joel Finstrom, her actions afterwards, including the execution of the 2012 contract for deed and the July 2015 will, expressed a different intention.

[¶43] On our review of the record, the district court did not clearly err in finding that Ruth Finstrom did not create an express or implied trust for Joel Finstrom's benefit.

C

[¶44] Joel Finstrom asserts the district court erred in concluding res judicata barred a portion of his April 2019 petition for allowance of claim. He argues the court denied him due process by prohibiting him from presenting evidence on his claim to an interest in Ruth Finstrom's real property.

[¶45] In April 2019, Joel Finstrom filed a petition for allowance of his March 2017 claim to an interest in Ruth Finstrom's real property and the care he provided to her from May 2015 to April 2016. At the August 2019 hearing, Joel Finstrom argued his claim relating to Ruth Finstrom's property was not an issue at trial, and Heartland did not disallow his claim against the estate until after trial. The district court concluded res judicata prohibited Joel Finstrom's petition for allowance of his claim that he owned an interest in Ruth Finstrom's property because it was litigated at the January 2019 trial.

[¶46] Res judicata prevents relitigation of claims that were raised, or could have been raised, in prior actions between the same parties or their privies. *Fredericks v. Vogel Law Firm*, 2020 ND 171, ¶ 10, 946 N.W.2d 507. A judgment on the merits in the first action between the same parties constitutes a bar to the subsequent action based upon the same claim or claims or cause of action. *Id.* at ¶ 11. The applicability of res judicata is a question of law, fully reviewable on appeal. *Id.* at ¶ 10.

[¶47] The district court did not err in ruling res judicata barred Joel Finstrom's petition for allowance of his claim to an interest in Ruth Finstrom's property. Joel Finstrom consented to having that claim decided at trial. Joel Finstrom, Annette Hauser and James Finstrom testified about Joel Finstrom's claim to Ruth Finstrom's property. The issue of whether Joel Finstrom owned an interest in Ruth Finstrom's property was litigated and decided at trial. Therefore, res judicata prevented him from raising the issue again in a subsequent proceeding involving the estate.

IV

[¶48] Annette Hauser contends the district court erred in denying her petition for formal probate of Ruth Finstrom's 2011 will. Hauser's petition alleged Ruth Finstrom lacked testamentary capacity when she executed her July 2015 will. Hauser argues the court erred in concluding the issues relating to Ruth Finstrom's testamentary capacity were decided at the January 2019 trial.

[¶49] This Court has explained testamentary capacity:

> "Testator must have sufficient strength and clearness of mind and memory, to know, in general, without prompting, the nature and extent of the property of which he is about to dispose, and nature of the act which he is about to perform, and the names and identity of the persons who are to be the objects of his bounty, and his relation towards them. He must have sufficient mind and memory to understand all of these facts; . . . . He must also be able to appreciate the relations of these factors to one another, and to recollect the decision which he has formed."

*Estate of Wagner*, 551 N.W.2d 292, 296 (N.D. 1996) (quoting *Stormon v. Weiss*, 65 N.W.2d 475, 504-05 (N.D. 1954)). Testamentary capacity is examined at the time of execution. *Wagner*, at 295. A will contestant must prove a lack of testamentary capacity by a preponderance of the evidence. *Id.* at 296. A determination of testamentary capacity, or the lack thereof, is a question of fact. *Id.* at 295.

[¶50] After trial, the district court found no credible evidence established that "Ruth [Finstrom] lacked [testamentary] capacity . . . when she executed the July 2015 Will." The court found Ruth Finstrom signed her July 2015 will in the presence of an attorney and six of her seven children, including Hauser. The court found "[n]o evidence was provided that any of the siblings voiced concern and objection over Ruth's capacity to contract at that time." The court found that "[w]hile [Ruth Finstrom's doctor] testified that Ruth may have had some capacity or memory problems in April of 2015, no other evidence was admitted showing Ruth lacked capacity when she signed the July 2015 Will."

[¶51] The district court also found Ruth Finstrom's 2015 will was her last valid will and testament. The court found the 2015 will expressly revoked the 2011 will. The court's findings on Ruth Finstrom's testamentary capacity and the validity of her 2015 will have support in the record and are not clearly erroneous.

[¶52] The district court's order denying Hauser's petition concluded "[t]he claims raised in said Petition are barred by res judicata and were previously decided by the Court's Findings of Fact, Conclusions of Law and Order for

14

Judgment dated March 12, 2019." The court discussed its decision at the August 2019 hearing on Hauser's petition:

> "The Court has already decided these issues [raised in Hauser's petition] are res judicata. The Court has already decided the seminal issues that would warrant a formal probate on the petition filed by Mr. Johnson in regards to this matter. Whether his client [Hauser] agrees with me or not, that's a different issue; right? But I decided those, including conclusions of law starting at the bottom of page eight, the top of page nine and throughout the 20-some page opinion of the Court from March 12, [2019].

> "These issues were tried, fully litigated, fully briefed, fully discussed, the 2011 will, 2015 will, a couple days of testimony, competent, capable attorneys, written briefing, written submissions thereafter. The matter has been decided by the Court. The train has left the station, as it were.

> "This matter was admitted to probate informally by and under the petition of James Finstrom, the original PR in regards to this matter. . . . I admitted this matter to probate a long time ago, and it was the 2015 will that was admitted to probate at that point in time.

> "We've had litigation, undue influence, capacity, all those kinds of things have been addressed and have been more fully addressed in the court's 20-some page opinion. I'm not going to restate them at this point in time. . . . The 2015 will was admitted to probate. That's the will that stood up. That's the last will and testament of Ruth Finstrom.

> "The 2011 will has been rejected specifically by findings, conclusions and order in the court's opinion of March 12, [2019]. I won't go through them all, but the petition for a formal probate is denied.

> "It is a true statement, as I've indicated both in my opinion and on the record and inquired of counsel in the January trial, certainly a true statement there have been aspects of a formal probate going on in this file for a long time. We were removing PRs

15

and then by consent and adding a professional PR, Heartland Trust, a contested trial here having to do with undue influence, capacity, which will provides, multiple different wills, et cetera, multiple different oral agreements, all kinds of things that came up at the trial, and so this certainly has had a feel of a formal probate and supervised administration to a point throughout the process, so I'm not saying this has completely been informal. It hasn't, okay?

"But I am saying that it was probated informally, it was submitted by James as then the PR. I've been probating it for years on at least a semi-formal basis, if you prefer. These issues have been litigated in regards to the matter. It's res judicata. The Court has already found and concluded the 2015 will is the last will and valid testament of Ruth Finstrom."

[¶53] Hauser asserts the district court erred in ruling res judicata prohibited her petition for formal probate of the 2011 will. She argues that at the time of the January 2019 trial, the only petition before the court was James Finstrom's petition for informal probate of the 2015 will and the 2011 will was not at issue at trial.

[¶54] "Informal proceedings" are "those conducted by the court for probate of a will or appointment of a personal representative without notice to interested persons." N.D.C.C. § 30.1-01-06(25). Informal proceedings do not involve adjudication. *Estate of Ketterling*, 515 N.W.2d 158, 162 (N.D. 1994). "Formal proceedings" are those "conducted before a judge with notice to interested persons." N.D.C.C. § 30.1-01-06(20). "A formal testacy proceeding is litigation to determine whether a decedent left a valid will." N.D.C.C. § 30.1-15-01(1). "A contested hearing on whether the decedent left a valid will, after notice and before a judge, is ordinarily a formal testacy proceeding." *Ketterling*, at 162. Under N.D.C.C. § 30.1-15-01(2), one may petition for formal probate of a will "without regard to whether the same or a conflicting will has been informally probated."

[¶55] For res judicata purposes, an informal probate "is conclusive as to all persons until superseded by an order in a formal testacy proceeding." N.D.C.C.

§ 30.1-14-02. *See also Ketterling*, 515 N.W.2d at 162 (stating that in an informal proceeding, the determinations made generally have no res judicata effect but are protected by various statutes of limitation). However, in formal proceedings, interested persons given notice of the proceedings under N.D.C.C. § 30.1-03-01 are bound by orders of the court. N.D.C.C. § 30.1-12-06. "When the formal processes of admitting a will to probate, appointing a personal representative, or settling an estate are preceded by notice to all interested persons and a full adversarial hearing, the adjudication generally binds notified persons." *Ketterling*, at 163. *See also* 96 C.J.S. *Wills* § 872 (2020) ("Any judgment rendered which determines the validity of a will is binding on all persons interested who were properly notified. . . . [A] judgment sustaining a will is res judicata on every ground which was, or could have been, litigated in that proceeding.").

[¶56] Here, James Finstrom petitioned for informal probate of Ruth Finstrom's 2015 will in December 2016. James Finstrom provided notice of the probate to his six siblings. The proceedings became more formal in May 2017 when Mark Finstrom petitioned to remove James Finstrom as personal representative. James Finstrom then filed a complaint against Schulz and Teresa and Daniel Finstrom, and Schulz and Teresa and Daniel Finstrom brought counterclaims against James Finstrom. Ruth Finstrom's mental capacity, the validity of her 2015 will, and Joel Finstrom's claim involving the 2011 will were decided after a two-day trial at which six of the seven children were present. Notice of all proceedings was provided to all interested parties throughout this action.

[¶57] Although this probate action began informally, it later had the characteristics of a formal probate with a trial and other hearings. *See Ketterling*, 515 N.W.2d at 162 ("A contested hearing on whether the decedent left a valid will, after notice and before a judge, is ordinarily a formal testacy proceeding."). Hauser had notice of all proceedings and appeared at trial. The issue raised in Hauser's petition for formal probate, Ruth Finstrom's testamentary capacity, was decided at trial. The district court also found Ruth Finstrom's 2015 will was valid and revoked her 2011 will.

17

[¶58] In light of the procedural posture of this case, Hauser was bound by the district court's March 2019 order. The court did not err in concluding res judicata prohibited Hauser's petition for formal probate of Ruth Finstrom's 2011 will.

V

[¶59] We have considered the parties' remaining arguments and conclude they are without merit or not necessary to our decision. The orders and judgment are affirmed.

[¶60] Daniel J. Crothers
Douglas A. Bahr, D.J.
Gerald W. VandeWalle
Jerod E. Tufte
Jon J. Jensen, C.J.

[¶61] The Honorable Douglas A. Bahr, D.J., sitting in place of McEvers, J., disqualified.