# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 216

In the Matter of the Estate of Marvin C. Lepp, Deceased

| | |
|---|---|
| Murray J. Lepp, Personal Representative, <br> and | Petitioner and Appellant |
| Michael L. Lepp, Personal Representative, <br> v. | Petitioner and Appellee |
| Maureen J. Lepp, and Dacotah Bank, <br> and | Respondents and Appellees |
| Myron C. Lepp, Myra M. American Horse, <br> Maxine J. Lepp, Merlyn W. Lepp, Jason Davis, <br> Nancy Harrell, Sarah Erck, and Amanda Finck, | Respondents |

## No. 20240310

Appeal from the District Court of McIntosh County, Southeast Judicial District, the Honorable Daniel D. Narum, Judge.

DISMISSED.

Opinion of the Court by Crothers, Justice.

John E. Ward (argued) and Ryan J. Joyce (appeared), Bismarck, ND, for petitioner and appellant.

Christopher J. Nyhus, Bismarck, ND, for respondent and appellee Maureen J. Lepp.

Collin D. Fischer, Aberdeen, SD, for respondent and appellee Dacotah Bank.

**Crothers, Justice.**

[¶1]  Murray Lepp appeals from district court orders entered against him relating to the Estate of Lepp. Murray Lepp argues the district court abused its discretion by appointing Dacotah Bank as successor personal representative because nine of the eleven heirs nominated Kirkwood Bank and Trust, by denying his motion to amend his response to Maureen Lepp's petition to cancel the contract for deed to assert affirmative defenses and additional remedies, and by entering a second amended scheduling order when Maureen Lepp failed to timely disclose any expert witnesses and the revised order extended her deadline.

[¶2]  Murray Lepp also argues the district court erred by denying his motion to dismiss Maureen Lepp's petition to cancel the contract for deed because Maureen Lepp lacked standing. He also argues the court erred by granting Maureen Lepp's motion for partial summary judgment, cancelling his contract for deed, by denying his motion for summary judgment and motion to strike, and by denying his motion to reconsider, seeking to enforce the contract for deed because Dacotah Bank spent funds attributable to Murray Lepp's payoff of the contract for deed.

[¶3]  Murray Lepp further claims the district court abused its discretion in various rulings in its order regarding rent: (1) determining Murray Lepp's payments on the contract for deed were forfeited; (2) awarding rent payments by Murray Lepp and a deficiency judgment against him; and (3) denying Murray Lepp any adjustment or recovery for his substantial improvements to the Section 6 property. He argues the district court erred by denying his petition for recovery of rent owed by Michael Lepp to the estate and by awarding Maureen Lepp attorney's fees.

[¶4]  We dismiss the appeal.

# I

[¶5]   An application for informal appointment of a personal representative of the estate of Marvin Lepp was filed on June 2, 2017. The heirs of the estate are seven of eight children and four grandchildren. Murray Lepp and his brother, Michael Lepp, were appointed as co-personal representatives of the estate on June 5, 2017.

[¶6]   Murray Lepp moved to remove Michael Lepp as co-personal representative on February 2, 2023. Maureen Lepp responded to Murray Lepp's motion. Maureen Lepp did not object to the removal of Michael Lepp, and also sought to remove Murray Lepp as co-personal representative. Michael Lepp responded to the motion to remove him as co-personal representative, and joined Maureen Lepp's motion to remove both co-personal representatives. Maureen Lepp filed a motion to remove Murray Lepp as the co-personal representative, and for accounting and appointment of an independent professional personal representative. A hearing on the motions to remove the personal representatives was held on July 19, 2023. Both personal representatives were removed, and the district court gave the heirs 30 days to nominate a professional successor personal representative. The district court appointed Dacotah Bank successor personal representative.

[¶7]   On May 26, 2023, Maureen Lepp brought a petition as an "interested person as an heir" to cancel Murray Lepp's contract for deed for a portion of the property (Section 6) owned by the estate. On July 18, 2023, Murray Lepp made a payment of $100,000 on the contract for deed and deposited the payment in the estate's account. On August 16, 2023, Murray Lepp moved to dismiss the petition, alleging Maureen Lepp lacked standing. On October 10, 2023, a hearing was held on the motion to dismiss the petition to cancel the contact for deed. The district court denied Murray Lepp's motion to dismiss the petition for cancellation of the contract for deed.

[¶8]   On June 18, 2024, Murray Lepp and Maureen Lepp both filed motions for summary judgment on the petition to cancel the contract for deed. The district court granted Maureen Lepp's motion for summary judgment, concluding

Murray Lepp defaulted on the contract for deed. The court also found Murray Lepp's $100,000 payment of the balance on the contract for deed was voidable.

[¶9] On October 3, 2024, Dacotah Bank provided an accounting of the estate dated September 11, 2024. The accounting showed Dacotah Bank moved the principal cash in the amount of $279,565 from the estate account Murray Lepp established, including the $100,000 Murray Lepp deposited into that account as the balance owed on the contract for deed, to Dacotah Bank's estate account, and that Dacotah Bank had spent those funds. Murray Lepp filed a motion to reconsider the cancellation of the contract for deed, arguing Dacotah Bank accepted the voidable payment on the contract for deed. The district court denied Murray Lepp's motion to reconsider.

[¶10] The district court received the parties' briefs on Murray Lepp's petition against Michael Lepp for rent owing and the Hometown Credit Union account, and unpaid rent Murray Lepp owed to the estate. On October 10, 2024, the district court entered its order on rent, finding Murray Lepp forfeited his payments to his father, Marvin Lepp, for the years 2011-2015, and Murray Lepp owed the estate for unpaid rent for 2016-2024 with interest. The court found Murray Lepp owed the estate $179,493 less his $100,000 payment on the contract for deed, and less $14,617 he paid in taxes. The court did not credit Murray Lepp for any improvements on the property.

[¶11] On November 8, 2024, Murray Lepp filed a notice of appeal. Maureen Lepp moved the district court for an award of attorney's fees. After a hearing, the district court awarded attorney's fees to Maureen Lepp to be paid by the estate. On February 11, 2025, Murray Lepp filed an amended notice of appeal from the following:

- The Order Appointing Dacotah Bank as Successor Personal Representative entered October 16, 2023;
- The Order Denying Murray Lepp's Motion to Dismiss Maureen Lepp's Petition to Terminate Murray Lepp's Interest in Contract for Deed entered October 16, 2023;

- The Order Denying Murray Lepp's Motion to Amend his Response to Maureen Lepp's Petition to Terminate Murray Lepp's Interest in Contract for Deed entered May 22, 2024;
- The Second Amended Scheduling Order entered May 24, 2024;
- The Order on Competing Motions for Summary Judgment and Murray Lepp's Motion to Strike entered September 5, 2024;
- The Order Regarding Rent entered October 10, 2024;
- The Order Denying Murray Lepp's Motion for Reconsideration entered November 6, 2024; and,
- The Order Granting Maureen Lepp's Motion for an Award of Attorney's Fees entered February 7, 2025.

## II

[¶12] Dacotah Bank claims this Court lacks jurisdiction over Murray Lepp's appeal of the order appointing it as successor personal representative because the notice was untimely under N.D.R.App.P. 4. Dacotah Bank argues the proceedings appointing it as successor personal representative were formal; therefore, the order was final and reviewable on entry or notice of entry of the order. No other party briefed this issue, or whether Murray Lepp's other issues are appealable at this time.

## A

[¶13] "In North Dakota the right to appeal is statutory, and we must dismiss for lack of jurisdiction if the law does not provide a basis for an appeal." *Dixon v. Dixon*, 2021 ND 94, ¶ 8, 960 N.W.2d 764. "Only judgments and decrees constituting a final judgment and specific orders enumerated by statute are appealable." *Id.* (citation omitted). "First, the order appealed from must meet one of the statutory criteria of appealability set forth in N.D.C.C. § 28-27-02. If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), N.D.R.Civ.P., if applicable, must be complied with. If it is not, we are without jurisdiction." *Id.* (cleaned up).

[¶14] Under North Dakota probate law, estates are subject to formal and informal administration in supervised and unsupervised proceedings. These

4

four descriptions are significant for our analysis here. "'Formal proceedings' means proceedings conducted before a judge with notice to interested persons." N.D.C.C. § 30.1-01-06(21). "'Informal proceedings' means those conducted by the court for probate of a will or appointment of a personal representative without notice to interested persons." N.D.C.C. § 30.1-01-06(26). "'Supervised administration' refers to the proceedings described in chapter 30.1-16." N.D.C.C. § 30.1-01-06(57). "The pendency of a proceeding for supervised administration of a decedent's estate stays action on any informal application then pending or thereafter filed." N.D.C.C. § 30.1-16-03(1). "Unless supervised administration as described in chapter 30.1-16 is involved, each proceeding before the court is independent of any other proceeding involving the same estate." N.D.C.C. § 30.1-12-07.

[¶15] In *Estate of Starcher*, we discussed the interplay of supervised or unsupervised administration of an estate and when a court's orders can be appealed:

> Initially, we note that, in this unsupervised administration, there are two other unresolved claims of other creditors pending against Hattie's estate. The record does not include a certification under Rule 54(b), N.D.R.Civ.P. Because there is no Rule 54(b) certification and there remain unresolved claims in this unsupervised administration, we must consider *sua sponte* whether this appeal is properly before us.
>
> Rule 54(b) is applicable to probate proceedings. However, we have not fully delineated the relationship of Rule 54(b) to unsupervised probate administration. Our analysis of the relationship of Rule 54(b) to unsupervised probate administration requires a brief description of the distinction between supervised and unsupervised administration.
>
> Supervised administration is a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the court which extends until entry of an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding. In contrast to the single-proceeding-supervised administration, in an unsupervised administration, each proceeding

5

before the court is independent of any other proceeding involving the same estate, although petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay. Finality in an unsupervised administration requires a concluding order on each petition, whereas finality in a supervised administration generally requires an order approving distribution of the estate and discharging the personal representative, or other order terminating the proceeding.

447 N.W.2d 293, 295 (N.D. 1989) (cleaned up).

[¶16] The Editorial Board Comment to N.D.C.C. § 30.1-12-07 (U.P.C. § 3-107) addresses the ability to combine formal and informal administration:

Sections 3-501 through 3-505 describe supervised administration, a judicial proceeding which is continuous throughout administration. It corresponds with the theory of administration of decedents' estates which prevails in many states. *See*, section 62, Model Probate Code. *If supervised administration is not requested, persons interested in an estate may use combinations of the formal proceedings (order by judge after notice to persons concerned with the relief sought), informal proceedings (request for the limited response that nonjudicial personnel of the probate court are authorized to make in response to verified application) and filings provided in the remaining Parts of Article III to secure authority and protection needed to administer the estate.* Nothing except self-interest will compel resort to the judge. When resort to the judge is necessary or desirable to resolve a dispute or to gain protection, the scope of the proceeding if not otherwise prescribed by the Code is framed by the petition.

(emphasis added); *see also Estate of Starcher*, 447 N.W.2d at 295, n.3. "In contrast to the single-proceeding-supervised administration, in an unsupervised administration, 'each proceeding before the court is independent of any other proceeding involving the same estate,' although 'petitions for formal orders of the court may combine various requests for relief in a single proceeding if the orders sought may be finally granted without delay.'" *Estate of Starcher*, at 295 (quoting N.D.C.C. § 30.1-12-07).

[¶17] A petition for supervised administration may be filed by any interested person. N.D.C.C. § 30.1-16-02. This case was initiated by an application for informal probate under N.D.C.C. § 30.1-14-01. The letters of administration were issued under N.D.C.C. § 30.1-14-07, governing informal probate. The district court entered the statement of informal appointment of a personal representative (intestacy) and letters of administration on June 5, 2017. A claim against the estate was filed July 28, 2017, and resolved by release of claim against the estate on August 17, 2017. No further filings occurred until February 2, 2023, when Murray Lepp moved for removal of his co-personal representative.

[¶18] The initial application for informal probate under N.D.C.C. ch. 30.1-14 began the unsupervised administration of an informal probate proceeding in this matter. That proceeding "for appointment of personal representative [was] concluded by an order making or declining the appointment." N.D.C.C. § 30.1-12-07. Five years later, Michael Lepp filed notice with his motion to remove the co-personal representative under N.D.R.Ct. 3.2. Rule 3.2, N.D.R.Ct. "applies to formal proceedings under the Uniform Probate Code." N.D.R.Ct. 3.2(f)(2). While the parties engaged in formal proceedings before the court, at no point did any interested party petition for supervised administration. Therefore, we must resolve the appealability question by determining whether the combined use of informal and formal proceedings resolved each proceeding before the court involving appellant Murray Lepp. *See Estate of Ketterling*, 2016 ND 190, ¶ 9, 885 N.W.2d 85 (cleaned up) ("When a judgment or order in an unsupervised probate does not settle all claims and disputes between the parties, but leaves open more litigation between the same litigants . . . and augers more appeals, the judgment or order is not appealable without a Rule 54(b) certification.").

B

[¶19] "Informal proceedings do not involve adjudication." *Estate of Finstrom*, 2020 ND 227, ¶ 54, 950 N.W.2d 401; *Estate of Ketterling*, 515 N.W.2d at 162. "Informal proceedings are thus limited to two kinds: admission of wills to probate and appointment of personal representatives." *Estate of Ketterling*, at 162 (explaining "[t]hese informal acts do not involve adjudication"). The proceedings in this unsupervised administration involving removal of one or

more of the co-representatives, and the many other filings thereafter, are neither. Instead, those proceedings involve adjudication. "Although this probate action began informally, it later had the characteristics of a formal probate with a trial and other hearings." *Estate of Finstrom*, ¶ 57 (explaining the proceedings became more formal in May 2017 when Mark Finstrom petitioned to remove James Finstrom as personal representative); *see also Estate of Smith*, 2021 ND 238, ¶ 10, 968 N.W.2d 157 ("We have previously recognized that extensive litigation can convert informal proceedings into formal probate proceedings.").

[¶20] Although these proceedings progressed from informal to formal, the parties did not petition for, or agree to, supervised administration of the estate. *See* N.D.C.C. § 30.1-16-02 ("A petition for supervised administration may be filed . . . ."); *see, e.g., Estate of Grengs*, 2015 ND 152, 864 N.W.2d 424 (an application for informal probate of a will began the proceedings but the personal representative petitioned the court, and the court granted the petition, for supervised administration); *Estate of Polda*, 349 N.W.2d 11, 16 (N.D. 1984) ("although a petition for informal probate had originally been filed, it was converted to a formal probate by agreement of the parties and a petition for formal probate of the will was filed").

[¶21] "It is important to distinguish formal proceedings concerning appointment from 'supervised administration.'" Editorial Board Comment to N.D.C.C. § 30.1-15-14. Formal proceedings concerning appointment "include[] any proceeding after notice involving a request for an appointment." *Id.* Supervised administration "originates in a 'formal proceeding' and may be requested in addition to a ruling concerning testacy or priority or qualifications of a personal representative, but is descriptive of a special proceeding with a different scope and purpose than those concerned merely with establishing the bases for an administration." *Id.* "In other words, a personal representative appointed in a 'formal' proceeding may or may not be 'supervised'." *Id.*

[¶22] The proceedings involving the removal of one or more of the co-personal representatives and the proceedings to cancel the contract for deed are formal proceedings or "filings provided in the remaining Parts of Article III to secure

8

authority and protection needed to administer the estate." Editorial Board Comment to N.D.C.C. § 30.1-12-07 ("If supervised administration is not requested, persons interested in an estate may use combinations of the formal proceedings . . . , informal proceedings . . . and filings provided in the remaining Parts of Article III to secure authority and protection needed to administer the estate."). The proceedings that resulted in the orders appealed from here are formal proceedings in an unsupervised probate or administration.

[¶23] An order is appealable under N.D.C.C. § 28-27-02(5) if it "involves the merits of an action or some part thereof." In an unsupervised probate, "each proceeding before the court is independent of any other proceeding involving the same estate." N.D.C.C. § 30.1-12-07; *see also Estate of Kish*, 2024 ND 76, ¶ 8, 5 N.W.3d 814. "Because each proceeding is independent, there needs to be finality, for purposes of appealability, only for the proceeding being appealed." *Id.* ¶ 8 (quoting *Estate of Ketterling*, 2016 ND 190, ¶ 7).

[¶24] Even in an unsupervised probate, not all orders are immediately appealable. "In an unsupervised probate, an order or judgment determining some, but not all, of one person's claims or disputes in an estate is not appealable without a Rule 54(b) certification." *Estate of Ketterling*, 2016 ND 190, ¶ 9 (cleaned up).

C

[¶25] Dacotah Bank claims Murray Lepp's appeal from the motion appointing it personal representative is untimely and his appeal of that issue must be dismissed.

[¶26] In *Jarmin v. Shriners Hosps. for Crippled Child.*, 450 N.W.2d 750 (N.D. 1990), an individual removed as personal representative to an estate appealed his removal. On self-examination of its jurisdiction to consider the appeal, this Court explained, "Jarmin's appeal from his removal as personal representative was independent from his other proceeding regarding the final accounting, and was made from a concluding order on the legatee's petition for removal." *Id.* at 751, n.3. "Moreover, this Court has, in the past, entertained cases on appeal from

9

similar judgments removing personal representatives. *See Matter of the Estate of Kjorvestad*, 304 N.W.2d 83 (N.D. 1981)." *Id.* Rule 4, N.D.R.App.P., requires filing a notice of appeal within 60 days of service of notice of entry of the judgment or order. "In the absence of service of a notice of order or judgment, actual knowledge evidenced on the record by action on the part of the appealing party commences the time for filing the notice of appeal." *Estate of Vendsel*, 2017 ND 71, ¶ 6, 891 N.W.2d 753. The order appointing Dacotah Bank as personal representative was entered on October 16, 2023. A notice of entry of that order was not served. Murray Lepp filed subsequent documents acknowledging the order appointing Dacotah Bank as early as July 25, 2024. Murray Lepp filed his notice of appeal on November 8, 2024. November 8 was more than 60 days after July 25; therefore, the appeal from the order appointing Dacotah Bank as personal representative is untimely.

III

[¶27] At the time this appeal was taken, several issues remained unresolved in district court. Prior to the appeal, Murray Lepp had filed a petition for recovery of rent owed by Michael Lepp. Since filing the first notice of appeal, Dacotah Bank and Michael Lepp filed an agreement settling his back rent, and Dacotah Bank petitioned the court for determination of back rent by Myron Lepp and Michael Lepp. Since filing the second notice of appeal, Dacotah Bank petitioned the court for sale of farm equipment. Dacotah Bank also petitioned the court for approval of the sale of real property to Michael Lepp and partial distribution of the estate from that sale. Prior to that petition, Dacotah Bank asked the heirs for debts against the estate, and Murray Lepp claimed several outstanding debts against the estate such as, expenses on the Texas property, attorney's fees incurred up and through his removal as personal representative, and additional attorney's fees "for defending against Maureen Lepp's frivolous petition." The petition for partial distribution remains unresolved. The estate has not received a final accounting, nor has a final distribution occurred. The estate remains open at this time. *See, e.g.*, *Estate of Ketterling*, 2016 ND 190, ¶ 11 (explaining without approval of some pending petitions and without final accounting and distribution, while some of the claims and disputes between the parties have

been resolved, other claims and disputes remain unresolved, the order is not appealable without Rule 54(b) certification).

[¶28] "This Court generally will not consider an appeal in a multi-claim or multi-party action that disposes of fewer than all claims against all of the parties unless the district court has first independently assessed the case and determined a certification under N.D.R.Civ.P. 54(b) is appropriate." *Morales v. Weatherford U.S., L.P.*, 2024 ND 81, ¶ 21, 6 N.W.3d 657; *see also Estate of Kish*, 2024 ND 76, ¶ 8; *Whitetail Wave LLC v. XTO Energy, Inc.*, 2022 ND 171, ¶ 6, 980 N.W.2d 200; *Dixon*, 2021 ND 94, ¶ 9.

[¶29] Here, the parties did not request Rule 54(b), N.D.R.Civ.P., certification. "Parties in probate cases bear the duty of requesting a Rule 54(b) order or certification if they seek an appeal." *Estate of Stuckle*, 427 N.W.2d 96, 97 (N.D. 1988) (citation omitted). In *Sickler v. Kirkwood*, 1997 ND 40, ¶ 6, 560 N.W.2d 532, we dismissed an appeal when "no party requested Rule 54(b) certification, there was no hearing on the issue, and no party demonstrated extraordinary circumstances or cognizable, unusual hardship." *See also Kish*, 2024 ND 76, ¶¶ 26-29 (Bahr, J., concurring and dissenting); *Pinks v. Kelsch*, 2024 ND 15, ¶¶ 7, 13, 2 N.W.3d 704 (dismissing appeal when, "[i]nstead of seeking certification under Rule 54(b), Defendants appealed to this Court"); *Dixon*, 2021 ND 94, ¶ 17 (dismissing appeal because the appeal was taken without Rule 54(b) certification); *Ted J. Boutrous, L.L.C. v. Transform Operating Stores, LLC*, 2021 ND 100, ¶ 6, 960 N.W.2d 801 (dismissing appeal when the defendants did not seek Rule 54(b) certification); *Holverson v. Lundberg*, 2015 ND 225, ¶ 10, 869 N.W.2d 146 (dismissing appeal for lack of Rule 54(b) certification); *Hurt v. Freeland*, 1997 ND 194, ¶ 1, 569 N.W.2d 266 (dismissing appeal for lack of Rule 54(b) certification); *Gissel v. Kenmare Twp.*, 463 N.W.2d 668, 672 (N.D. 1990) (dismissing appeal when there was no Rule 54(b) certification); *Regstad v. Steffes*, 433 N.W.2d 202, 202 (N.D. 1988) ("Because no order comporting with Rule 54(b), N.D.R.Civ.P., was entered, we dismiss the appeal.").

[¶30] Many but not all claims by and against Murray Lepp have been resolved. Even in an unsupervised probate, the unresolved claims by or against a party

prevent immediate appellate review without N.D.R.Civ.P. 54(b) certification. *See Estate of Lutz*, 1999 ND 121, 595 N.W.2d 590 (district court abused its discretion and improvidently granted N.D.R.Civ.P. 54(b) certification of appeal due to unresolved claims). Depending on the relationship between adjudicated and unadjudicated claims, N.D.R.Civ.P. 54(b) certification may not be warranted or accepted by this Court. *Id*.

IV

[¶31] We dismiss the appeal.

[¶32] Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Douglas A. Bahr
       Lolita G. Hartl Romanick, S.J.

[¶33] The Honorable Lolita G. Hartl Romanick, S.J., sitting in place of Tufte, J., disqualified.